Barbra L. WISE, Petitioner

v.

## UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 12, 2014.

Decided March 25, 2015.

Lisa Jo Fanelli–Greer, Grantham, for petitioner.

Judith M. Gilroy, Assistant Counsel, Harrisburg, for respondent.

BEFORE: DAN PELLEGRINI, President Judge, MARY HANNAH LEAVITT, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge LEAVITT.

Barbra L. Wise (Claimant) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) denying her application for unemployment compensation benefits. In doing so, the Board affirmed the Referee's determination that Claimant was ineligible for benefits under Section 402(b) of the Unemployment Compensation Law (Law)[1] because she voluntarily terminated her employment without cause of a necessitous and compelling nature. Finding no error by the Board, we affirm.

Claimant began her employment with Kindred Place (Employer) in October 2011

---

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). It provides, in relevant part, that "[a]n employe shall be ineligible for compensation for any week ... [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. § 802(b).

as an on-call PRN employee providing personal services to Employer's clients.[2] She worked in the PRN position until April 2013 when she accepted a full-time home health aide position with Employer, working 7.5 hours per day for seven to nine days out of a 14–day pay period. Claimant's employment ended in October 2013, and she applied for unemployment compensation benefits. The UC Service Center determined that she had voluntarily resigned, which rendered her ineligible under Section 402(b) of the Law.[3] Claimant appealed, and a hearing was held by the Referee.

Claimant testified that on July 31, 2013, while working as a home health aide, she sustained a back injury. She was off work for several days and then returned to a light-duty position that met her physician's restrictions against lifting or pulling weights in excess of 20 pounds. On October 5, 2013, Claimant left work because of back pain. Claimant's physician then further restricted Claimant to sedentary only work until October 31, 2013. Notes of Testimony, December 20, 2013, at 11–12 (N.T. —).

On October 10, 2013, Claimant met with Employer's Manager, Carol Graham, and its Executive Director, Lauren Clark, to discuss her employment situation. Clark informed Claimant that Employer needed to return Claimant to the on-call PRN position she had previously held. Claimant testified that Clark asked Claimant to sign a document consenting to the job change, but Claimant refused.

Claimant testified that Graham left a voicemail on Claimant's phone on October 14, 2013, stating that Claimant had 48 hours to respond or she would be discharged. Claimant testified that she returned Graham's call on October 15, 2013, and left a voicemail requesting that Graham fax the document about the PRN position to Claimant's attorney and stating that Employer must stop bullying and harassing her.

Clark testified that Claimant was hired as an on-call PRN employee. In April 2013 Claimant accepted a position as a home health aide, contingent upon her completing the training necessary to become a Certified Nursing Assistant (CNA) within 90 days, as required by governmental regulations.[4] Claimant did not com-

---

2. PRN is an abbreviation for the Latin phrase *pro re nata,* which translates to "as the occasion arises, or as necessary." STEDMAN'S MEDICAL DICTIONARY 1459 (27th ed. 2000). Employer classifies a PRN employee as "on-call," *i.e.,* "a person hired to meet occasional and momentary requirements for additional staff. This definition includes any person employed strictly on an as-needed basis." N.T., December 20, 2013, Claimant's Exhibit 1.

3. The UC Service Center determined that Claimant was eligible for benefits under Section 401(d)(1) of the Law, which provides that "compensation shall be payable to any employe who is or becomes unemployed, and who ... [i]s able to work and available for suitable work." 43 P.S. § 801(d)(1). Although Claimant had sustained a work injury, the UC Service Center found that she was able to work in a modified position and was available to work, as required by Section

401(d)(1) of the Law. Claimant's availability for employment is not in dispute in this appeal.

4. There was conflicting testimony concerning whether Claimant was informed about the 90–day deadline for obtaining her CNA certification. Employer's Manager, Carol Graham, testified as follows:

R: [D]id you make the Claimant aware that there was a limited period of time for her to get the training for her to become a Home Health Aide?

EW2: Yes, I did ... I announced to our staff and said we welcome [Claimant] to the CNA or Home Health Aide position. She would be going through this as a trial to see if she wants to do the CNA work ... when she is ready, we will put her through the HACC class.... She was informed that it had to be within the 90 day period.

plete the CNA training within 90 days but, due to Employer's oversight, she continued working as a home health aide past that deadline.

Clark testified that, at the meeting on October 10, 2013, she informed Claimant that she could not remain in the home health aide position because she had not obtained the requisite CNA certification. However, Clark informed Claimant that Employer could accommodate Claimant's need for a sedentary position by giving her a desk job as a PRN employee. When Claimant requested time to consider her options, Clark asked her to respond by the following day because Clark needed to set the employee work schedule. Claimant did not respond. Clark and Graham attempted to reach Claimant by telephone several times on October 11 and October 14, 2013. Claimant contacted Employer on October 15 by leaving the voicemail message described by Claimant. In response, Clark and Graham terminated further contact with Claimant. Clark believed Claimant had resigned because she did not respond within 24 hours to the offer of a desk job as requested at the October 10, 2013, meeting.

The Referee resolved all conflicts in the testimony in favor of Employer. As a result, the Referee found that Claimant was aware that she needed to obtain her CNA certification within 90 days of accepting the home health aide position. The Referee also found that Employer offered Claimant a sedentary position and explained why she was being returned to her former position as an on-call PRN employee. The Referee held that Claimant was ineligible for benefits under Section 402(b)

\* \* \*

R: You personally discussed this with her?
EW2: Yes and so did Deb Haye.
N.T. 35–36.

5. Our scope of review is limited to determining whether constitutional rights were violat-

of the Law, 43 P.S. § 802(b), because she voluntarily resigned without a necessitous and compelling reason. Because Claimant was unemployed and available for suitable work, *i.e.*, a sedentary position, she met the eligibility requirement in Section 401(d)(1) of the Law, 43 P.S. § 801(d)(1). Claimant appealed the Referee's ruling under Section 402(b). On review, the Board adopted the Referee's findings of fact and conclusions of law and affirmed the Referee's order. Claimant now petitions for this Court's review.

■ On appeal,[5] Claimant raises several issues for our review that we summarize as follows. First, Claimant argues that the Board's factual findings are not supported by substantial evidence, and that the Board capriciously disregarded other competent evidence. Second, Claimant argues that she was discharged by Employer and did not voluntarily quit. Third, Claimant argues, alternatively, that she had a necessitous and compelling reason for resigning.

■ Generally, voluntary termination of employment renders an employee ineligible for unemployment compensation benefits under Section 402(b) of the Law. There is an exception where the employee resigns for cause of a necessitous or compelling nature. Whether a claimant has necessitous and compelling reasons for terminating her employment is a question of law subject to appellate review. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829, 832 (1977).

■ The Board is the ultimate fact finder and has exclusive power to resolve

ed, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. *Seton Company v. Unemployment Compensation Board of Review*, 663 A.2d 296, 298 n. 2 (Pa.Cmwlth. 1995).

conflicts in the evidence and to decide witness credibility and the weight to be accorded the evidence. *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa.Cmwlth.2008). It is irrelevant whether the record contains evidence to support findings other than those made by the fact finder; the critical inquiry is whether there is substantial evidence in the record to support the findings actually made, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Philadelphia Gas Works v. Unemployment Compensation Board of Review*, 654 A.2d 153, 157 (Pa. Cmwlth.1995). On review, this Court examines the evidence in the light most favorable to the prevailing party, and gives that party the benefit of all inferences that can be logically and reasonably drawn from the testimony. *Chapman v. Unemployment Compensation Board of Review*, 20 A.3d 603, 607 (Pa.Cmwlth.2011).

In her first issue, Claimant argues that many of the Board's findings of fact are not supported by substantial evidence and, further, that the Board capriciously disregarded competent evidence. We disagree.

■ Claimant challenges the Board's factual findings on several key points: the circumstances surrounding Claimant's separation from employment; whether Employer offered Claimant sedentary work; and whether Employer informed Claimant that she had to obtain her CNA certification within 90 days of accepting the home health aide position. Claimant and Employer offered conflicting testimony on these issues, and the Board resolved all conflicts in the testimony in favor of Employer. As the ultimate finder of fact, the Board has this authority. The Board credited Employer's witnesses and did not credit Claimant. Because the Board's factual findings are supported by substantial evidence, they are binding and cannot be disturbed on appeal. *Ductmate*, 949 A.2d at 342. Essentially, Claimant asks this Court to accept her version of the facts, and this we cannot do.

■ Claimant also argues that the Board capriciously disregarded competent evidence. Specifically, Claimant contends that the Board disregarded (1) Claimant's testimony that the change in her classification from full-time home health aide to on-call PRN meant that she would lose her insurance benefits; (2) Employer's letter to Claimant informing her that her benefits were terminated effective October 9, 2013, which pre-dated the October 10, 2013, meeting with Clark and Graham; (3) the definitions of full-time status and on-call status in Employer's personnel manual; and (4) the fact that Graham never faxed the job reclassification paperwork to Claimant's attorney upon Claimant's request.

■ A capricious disregard of evidence occurs where the fact finder willfully and deliberately disregards competent and relevant evidence that one of ordinary intelligence could not possibly have avoided in reaching a result. *Spencer v. City of Reading Charter Board*, 97 A.3d 834, 842 (Pa.Cmwlth.2014). The Pennsylvania Supreme Court has explained that review for capricious disregard of competent evidence is an "appropriate component of appellate consideration in every case in which such question is properly before the court." *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478, 487 (2002). In *Wintermyer*, the Supreme Court noted that where there is substantial evidence to support the agency's factual findings and those findings support the legal conclusions, "it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard." *Id.* at 487 n. 14. The standard

announced in *Wintermyer* applies whether one or both parties present evidence and, thus, overruled this Court's earlier-announced paradigm that appellate review for capricious disregard of evidence was limited to the circumstance where the burdened party was the only party to present evidence and did not prevail. *See, e.g., Lautek Corporation v. Unemployment Compensation Board of Review*, 138 Pa. Cmwlth. 547, 588 A.2d 1007, 1010 (1991).

 Disturbing an agency's adjudication for a capricious disregard of evidence is appropriate only where the factfinder has refused to resolve conflicts in the evidence, has not made essential credibility determinations or has completely ignored overwhelming evidence without comment. *Hinkle v. City of Philadelphia*, 881 A.2d 22, 27 (Pa.Cmwlth.2005). In *Hinkle*, this Court, citing *Wintermyer*, explained that:

> "Capricious disregard" then is just another name for the agency abusing its discretion and is an error of law when the agency fails to give an indication that it has examined countervailing substantive testimony that had to be considered at arriving at its decision.
>
> The capricious disregard standard then is nothing more than a shorthand way of referring to an amalgam of existing overlapping legal and constitutional standards mentioned above that safeguard against arbitrariness by state and local administrative agencies by requiring a meaningful explanation of why the losing party's overwhelming evidence was not accepted.

*Id.* (footnote omitted). An appellate court conducting a review for capricious disregard of material, competent evidence may not reweigh the evidence or make credibility determinations. *Spencer*, 97 A.3d at 842 (Pa.Cmwlth.2014) (citing *Wintermyer*, 812 A.2d at 487–88).

Applying the above principles to the case *sub judice*, we conclude that the Board did not capriciously disregard competent and relevant evidence. It did not ignore Claimant's "overwhelming evidence" without comment. The Board explained that Employer demoted Claimant to PRN because she had failed to obtain her CNA certification. Employer's personnel manual and changes to Claimant's insurance benefits were simply not relevant to this matter, nor was Claimant's request to fax the paperwork to her attorney about her reclassification. By that time, Claimant had already resigned.

 In her second issue, Claimant argues that she was discharged by Employer. Whether a claimant's separation from employment constitutes a voluntary resignation is a question of law subject to this Court's plenary review and will be determined from the totality of the facts surrounding the cessation of employment. *Middletown Township v. Unemployment Compensation Board of Review*, 40 A.3d 217, 224 (Pa.Cmwlth.2012). A voluntary termination requires a finding "that the claimant had a conscious intention to leave employment." *Procyson v. Unemployment Compensation Board of Review*, 4 A.3d 1124, 1127 (Pa.Cmwlth.2010). A voluntary termination is not limited to a formal or even an express resignation; it can be inferred from the employee's conduct. *G.C. Murphy Co. v. Unemployment Compensation Board of Review*, 80 Pa.Cmwlth. 464, 471 A.2d 1295, 1297 (1984). An employee who leaves her employment without informing her employer when or if she is planning to return may be held to have voluntarily quit. *Iaconelli v. Unemployment Compensation Board of Review*, 892 A.2d 894, 896 (Pa.Cmwlth.2006).

 In the present case, it is undisputed that Claimant met with Clark and Graham on October 10, 2013. Employer's

credited testimony established that when Claimant learned that she was being returned to a PRN classification, she requested time to consider her employment situation. Clark granted Claimant 24 hours to respond. Clark needed to set the schedule for all employees, and the schedule would include the desk job offered to Claimant. Claimant did not respond. Clark and Graham attempted to reach her multiple times on October 11, 2013, and October 14, 2013, but were unsuccessful. On October 15, 2013, Claimant asked Graham to fax the reclassification paperwork to her attorney and to stop harassing her. At that point, Employer ceased contact with Claimant, as she had requested. On these facts, we agree with the Board that Claimant's conduct exhibited a conscious intention to leave her employment.

Finally, Claimant argues that, assuming she quit, she had two necessitous and compelling reasons to do so. Claimant argues that she resigned for health-related reasons. Alternatively, Claimant argues that Employer's substantial unilateral changes to the terms of her employment justified her resignation. Neither of Claimant's arguments have merit.

 A claimant who asserts she had a necessitous and compelling reason for quitting her job bears the burden of proof. *Deiss v. Unemployment Compensation Board of Review*, 475 Pa. 547, 381 A.2d 132, 135 (1977). The Pennsylvania Supreme Court has defined "necessitous and compelling" as follows:

> [I]t can be said that "good cause" for voluntarily leaving one's employment (i.e. that cause which is necessitous and compelling) results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a rea-

sonable person under the circumstances to act in the same manner.

*Taylor*, 378 A.2d at 832–33.

 To establish health problems as a compelling reason to quit, the claimant must offer competent evidence of the health problems, show that she informed the employer of these problems and that she was available for and able to perform suitable work. *Lee Hospital v. Unemployment Compensation Board of Review*, 161 Pa.Cmwlth. 464, 637 A.2d 695, 698 (1994). With respect to the third prong of the test, Claimant contends that Employer did not offer her a reasonable accommodation for her injury. Her argument is contradicted by Clark's credited testimony that at the October 10, 2013, meeting she offered Claimant a desk job that would have complied with her doctor's medical restrictions. Thus, Claimant did not satisfy the standard in *Lee Hospital* for proving that her resignation was for compelling health-related reasons.

 In any event, the primary reason for Claimant's resignation was the change in her job classification, which she characterizes as a substantial unilateral change in the terms of her employment that justified her resignation. However, where a demotion is justified, it does not constitute a necessitous and compelling reason to voluntarily quit. In *Allegheny Valley School v. Unemployment Compensation Board of Review*, 548 Pa. 355, 697 A.2d 243 (1997), the claimant was demoted for his inability to perform the responsibilities of his position. The claimant refused the demotion and voluntarily quit his job. The Supreme Court determined that the claimant was ineligible for benefits, explaining:

> [T]he Unemployment Compensation Law compels us to conclude that the logical focus for determining whether necessitous and compelling reasons exist

for a claimant to voluntarily terminate his employment after receiving a demotion is the justification for the demotion. Thus, *a claimant does not have necessary and compelling reasons to voluntarily terminate his employment if the demotion was justified because the change in job duties and remuneration was the result of the claimant's fault.*

*Id.* at 248 (footnote omitted) (emphasis added). Accordingly, where a claimant refuses to accept a justified demotion, the claimant is ineligible for benefits because "he is unemployed as a result of his own fault." *Id.*

Here, it was Claimant's own inaction that caused Employer to demote her. Claimant was hired as a PRN employee in October 2011 and promoted in April 2013 to a modified full-time home health aide. Claimant was put on notice when she accepted the promotion that she had to obtain her CNA certification within 90 days, which was required by law. As a result of Claimant's failure to fulfill that job requirement, Employer justifiably demoted her to a PRN employee.

For all of the foregoing reasons, we affirm the Board's denial of benefits.

### ORDER

AND NOW, this 25th day of March, 2015, the order of the Unemployment Compensation Board of Review dated April 1, 2014, in the above-captioned matter is hereby AFFIRMED.