# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lynne A. Percinsky, : 
               Petitioner : 
                : 
        v. :   No. 409 C.D. 2015
                :   Submitted: July 31, 2015
Unemployment Compensation : 
Board of Review, : 
               Respondent : 

BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
             HONORABLE ROBERT SIMPSON, Judge
             HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**             **FILED: September 15, 2015**

      Lynne A. Percinsky (Claimant), representing herself on appeal, petitions for review of an order of the Unemployment Compensation Board of Review (Board) that dismissed her appeal from a referee's decision as untimely under Section 502 of the Unemployment Compensation Law (Law).[1]   In its decision, the Board noted the referee's decision denied Claimant's application for unemployment compensation (UC) benefits.  The Board further found the referee's decision confused Claimant, who had multiple UC proceedings pending at the same time.  However, the Board found no evidence indicating the UC authorities misled or misinformed Claimant regarding her right to appeal or her need to appeal.  Given the unique and confusing circumstances confronting Claimant, we reverse and remand for a decision on the merits of Claimant's appeal.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §822.

# I. Background

In his July 2014 decision, the referee noted Claimant worked for Crown American Associates (Employer) as a waitress at the rate of $3.25 per hour plus tips. Claimant worked approximately 30 to 40 hours per week from September 2006 until January 2012.

Claimant filed an application for UC benefits in January 2011. During the period beginning on April 2, 2011 and ending on July 30, 2011, Claimant received $5,961 in UC benefits.

However, three years later, in early June 2014, after conducting an audit that revealed a difference in the amount of earnings reported by Claimant and the amount of her earnings reported by Employer, the Harrisburg Overflow Center (Overflow Center) sent Claimant a notice of an alleged overpayment of benefits based on unreported earnings. See UCC-990 Overpayment Information, Certified Record (C.R.), Item No. 3. Claimant did not agree with the overpayment. Id. To that end, Claimant asserted she never falsified anything, and Employer must have included her vacation and holiday pay without informing her. Id.

Thereafter, a UC representative orally interviewed Claimant regarding the alleged overpayment. See Record of Oral Interview, C.R., Item No. 4. The UC representative noted the following (with emphasis added):

> This is a fault/fraud ovp as the clmt was working while she was reporting some earnings, all of the weeks except for one had earnings reported below her partial benefit credit, regardless of her actual earnings.

2

> The clmt's assertion that the differential is actually the employer's fault due to fluctuating pay rates and holiday pay is hardly credible.
>
> There is no indication that clmt contacted the service center to report the discrepancies which were usually on the order of two hundred plus dollars per week.
>
> A UC990 was sent to the clmt who responded by attaching a Referee's Decision on a similar issue. In that case, the Referee changed the ovp to non-fault, no PV.
>
> I do not believe this was a matter of simple carelessness or the clmt's inability to calculate hours and pay rates properly. I believe that the clmt deliberately reported earnings below her [partial benefit credit] in order to receive the maximum amount of unemployment compensation.

Id.

Consequently, the Overflow Center issued a Notice of Determination – Overpayment of Benefit. See C.R., Item No. 5. The notice of determination indicated Claimant's weekly benefit rate of $351 and a partial benefit credit (PBC) of $141. A claimant's benefits will not be decreased where the claimant performs part-time work and her earnings do not exceed her PBC. See Lopata v. Unemployment Comp. Bd. of Review, 484 A.2d 219 (Pa. Cmwlth. 1984). Here, the UC authorities found, with the exception of one week, Claimant's reported weekly earnings were below her PBC while her actual weekly earnings exceeded her PBC. See Notice of Determination at 3. The notice further indicated Claimant knowingly failed to report all earnings. Id. at 4. Therefore, the Overflow Center found Claimant failed to file a valid claim for UC benefits. Id.

As such, the Overflow Center disapproved Claimant for UC benefits under Section 401 of the Law[2] (qualifications required to secure compensation) in connection with Section 4(u) of the Law[3] (whether claimant meets definition of "unemployed"); Section 404(d)(1) of the Law[4] (where weekly earnings exceed PBC, claimant should receive weekly benefit rate less earnings exceeding the PBC); and, Section 401(c) of the Law[5] (invalid application for benefits; whether the claimant knowingly made false statements or failure to disclose material facts).

In sum, the Overflow Center determined Claimant underreported the amount of her earnings and issued a notice of determination finding Claimant ineligible for benefits during the period from April 2, 2011 through July 30, 2011. The Overflow Center also issued a notice of a fault overpayment under Section 804(a) of the Law, 43 P.S. §874(a), in the amount of $5,961. In addition, the Overflow Center imposed a 20-week disqualification penalty under Section 801(b) of the Law, 43 P.S. §871(b). Claimant timely appealed the notice.

Following a hearing, the referee issued a decision identifying the following issues:

> Is [Claimant] unemployed during claim weeks ending
> April 2, 2011 through July 30, 2011? Did [Claimant] file
> her bi-weekly claims in a proper manner reflecting

_____

[2] 43 P.S. §801.

[3] 43 P.S. §753(u).

[4] 43 P.S. §804(d)(1).

[5] 43 P.S. §801(c).

accurate earnings for each Sunday to Saturday claim week in the bi-weekly reporting period? Did [Claimant] receive UC benefits to which she was not entitled and, if so, was a fault overpayment properly established? If a fault overpayment, did [Claimant] knowingly fail to disclose proper earnings to be assessed penalty weeks in addition to the fault overpayment?

Referee's Dec., 7/24/14, at 2.

Because Employer failed to appear at the hearing to authenticate the quality assurance report it filed with the earnings report submitted to the UC authorities, the referee, unlike the Overflow Center, chose not to adjudicate the matter under Sections 401, 4(u) and 404(d)(1) of the Law. Rather, the referee chose to proceed solely under Section 401(c) of the Law (invalid application; knowingly false statements or material omissions).

Ultimately, the referee did not find Claimant's testimony credible. To that end, the referee stated (with emphasis added):

> The Referee does not find [Claimant's] testimony competent and credible that she accurately reported her earnings which included her declared cash tips to [Employer], the credit card tips paid out on a daily basis by [Employer] in addition to her wage at $3.25 per hour times the number of hours she worked that week. This lack of credibility is based upon the fact that [Claimant's] initial testimony was that she was working between 30 and 40 hours per week with [Employer]. Even with limited tips, such hours would range [Claimant's] earning from a low of approximately $210 to a high of $290 per week. …

* * * *

5

> While the Referee cannot draw the same conclusion that the Service Center representative had, that he believed [Claimant] was not reporting her tips, the Referee can draw the conclusion that [Claimant] was substantially underreporting her earnings or failed to report the three components of her earnings for the claim weeks filed, which included the $3.25 per hour times the number of hours worked that week, the declared cash tips and the credit tips.

Referee's Dec. at 2-3. In ruling Claimant ineligible for benefits under Section 401(c) as a result of an invalid application based on knowingly false statements, the referee observed (with emphasis added):

> [Claimant] admits that [Employer] provided her a pay stub, albeit not a paycheck, on a weekly basis where [it] provide[d] [Claimant] an opportunity to reconcile her records to those maintained by [Employer]. <u>At the time of hearing, [Claimant] did not disclose that she was disputing the bi-weekly earnings on her pay stubs to indicate the earnings were substantially over-reported in either hours worked, her declared cash tips or even the credit card tips [Employer] paid out to [Claimant] at the end of each of her work shifts. Therefore, [Claimant] failed to properly file for her biweekly benefits to be ineligible under Section 401(c) for claim weeks ending April 2, 2011 through July 30, 2011</u>.

Referee's Dec. at 3.

With respect to the fault overpayment, the referee observed that Claimant's counsel relied on the fraud overpayment provisions of the federal Emergency Unemployment Compensation Act of 2008[6] (EUC Act) rather than the

---

[6] Title IV of the Supplemental Appropriations Act of 2008, P.L. 110-252, Stat. 2323, §§4001-07, 26 U.S.C. 3304 note. In <u>Gnipp v. Unemployment Compensation Board of Review</u>, **(Footnote continued on next page…)**

overpayment provisions in Section 804 of the Law, 43 P.S. §874, which are applicable here. To that end, the referee reasoned (with emphasis added):

> For the record, Claimant['s] Counsel cites the [EUC Act] overpayment language which the fraud overpayment language of the EUC mirrors the state [UC] penalty week language. Whereas, the regular [UC] fault overpayment language does not mirror our penalty week language which imposes an additional element requiring the claimant knowingly failed to disclose accurate earnings. In this instance, the Referee's assessment of [Claimant's] understanding of how she was paid by [Employer] is that it was understood by [Claimant] that she received $3.25 for every hour she worked, declared cash tips plus credit card tips from customers as her earnings which would have been accounted for by [Employer] on a biweekly basis. [Claimant's] reported earnings to the [UC] system are a substantial misrepresentation by [Claimant] on a consistent basis. Since it is a material representation of her earnings for each claim week at issue, in the opinion of the Referee, a fault overpayment is warranted. Therefore, a fault overpayment in the amount of $5,961 is established.

Referee's Dec. at 3.

However, the referee dismissed the 20-week disqualification penalty imposed by the Overflow Center under Section 801(b) of the Law. In so doing, the referee reasoned (with emphasis added):

_____

**(continued…)**

82 A.3d 522 (Pa. Cmwlth. 2013), we noted, the state UC statute, unlike the federal EUC Act, expressly allows the UC authorities to determine whether an overpayment of regular UC benefits is either fault-based or non-fault, and thus beyond recoupment. The EUC Act is worded differently and requires repayment of an overpayment unless the claimant obtains a waiver or successfully appeals. Gnipp.

7

Section 801(b) of the Law provides, in part, that <u>whoever makes a false statement knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase any compensation or other payment under this Act … may be disqualified in addition to such week or weeks of improper payments for a penalty period of two weeks and for not more than one additional week for each such week of improper payment</u>.

Based upon the record developed, the Referee is <u>unable to conclude that [Claimant] knowingly underreported her earnings for the claim weeks at issue from April 2, 2011 to July 30, 2011.</u> Therefore, the penalty weeks assessed are dismissed.

Referee's Dec. at 3.

The referee's decision included a mailing date of July 24, 2014, and it indicated the "final date to appeal" as August 8, 2014. <u>See</u> Referee's Dec. at 1. The referee's decision also indicated that Claimant's attorney attended the July 14, 2014 hearing. <u>Id.</u> Claimant, however, filed her uncounseled appeal by U.S. mail on November 17, 2014, as indicated by the postmark.

In her appeal, Claimant stated (with emphasis added):

<u>I did not know that the July 2014 hearing and October 2014 hearings were different. If for any reason I thought losted [sic] my hearing in July; I would have appealed. Atty Barbin is no longer involved in my [UC] claims … Please allow … case to reopen ….</u>

I am writing this for the Referee to relook at my claim dated July 14th 2014. <u>I was unaware that I was found to pay the amount. I am now getting letter from the IRS stating that amount will be taken out of my return. … I have been talking to Harrisburg since Oct 2014 after my second referee hearing on October 6th. When I saw the</u>

8

word reversed I thought that the decision was in my favor. If it was not for Harrisburg explaining to me that the July and October claims are two different claim [sic] I would have never known I was at fault. They advised me that I contact the referee office to file an untimely appeal since it is out of their jurisdiction. They read all my information and stated that usually when an employer does not appear they usually go in favor of the claimant. I would appreciate if my claim would be re-examined for July 14th 2104 [sic]. I do not understand all of the acts and codes and when I got the decisions for both referee hearings I supposed I was non fault and that my honestly [sic] was honored.

I did not falsify any information and have only told the truth through both hearings. I feel that mathematical errors could have been made at Holiday Inn. Each week a minimum wage hostess would record the weekly earnings and with being said numbers could have been wrong. I also filed over the phone with an automated system not a person. I would like all this to be considered for that claim instead of all blame on myself. … I would like the opportunity to straighten this out and have that claim reexamined by the referee office because I am 28 years old and this happened almost 4 years ago and I do not want it to affect my life like it is at this time. If any way I feel like I deserved for this outcome or feel this decision is correct on all the whole amount of money I would not be writing this letter to reexamine my claim case.

Claimant's Pet. for Appeal, 11/18/14; C.R. at Item No. 14.

In her request for an additional hearing, Claimant essentially repeated her position. See Claimant's Request for Additional Hr'g, 12/4/14; C.R. at 16.

9

In response, the Board directed the referee to schedule a hearing to provide Claimant an opportunity to testify regarding whether her appeal should be accepted as timely filed. See Board's Remand Memo, 12/10/14; C.R. Item No. 17.

During a subsequent telephone hearing, Claimant testified (with emphasis added):

> I did not know that the Court Hearing from July to October was different. That's my fault. I did not see the different days so when I received something from the IRS I called Harrisburg; they were very kind to me. They weren't sure as well but they looked into it more and more, got back to me several times and explained to me that the July 24th and the October were two – for two different time frames. So when I got my letter in the mail from my July 14th [inaudible] to the July 24th I thought I won that case so I thought it was the same case.

N.T., 1/5/15, at 3.

Following the hearing, the Board entered a decision and order dismissing Claimant's appeal as untimely under Section 502 of the Law; 43 P.S. §822. In its decision, the Board found the following facts:

> 1. [Claimant] filed an application for [UC] benefits on January 2, 2011.
>
> 2. [Claimant's] request was denied by the Department of Labor and Industry (Department).
>
> 3. [Claimant] filed an appeal from this determination.
>
> 4. Following a hearing on the merits, the Referee issued a decision which denied [Claimant] benefits and assessed a fault overpayment.

5. A copy of the Referee's decision was mailed to [Claimant] at her last known post office address on the same date.

6. The decision was accompanied by notice advising that the interested parties had fifteen [15] days in which to file a valid appeal.

7. [Claimant] received a copy of the Referee's Decision.

8. [Claimant's] appeal from the referee's decision, in order to be timely, had to have been filed on or before August 8, 2014.

9. [Claimant] was confused by the Referee's order and thought that it concerned her claim for different benefit weeks.

10. [Claimant's] appeal was filed on November 17, 2014, by U.S. mail, as evidenced by the postmark.

11. There was no evidence that [Claimant] was misinformed or misled by the [UC] authorities regarding her right or the necessity to appeal.

Bd. Dec., 1/23/15, Findings of Fact (F.F.) Nos. 1-11 (emphasis added).

Finding no evidence that the UC authorities misled or misinformed Claimant regarding her right to appeal or the necessity to appeal, the Board dismissed Claimant's appeal under Section 502 of the Law. The Board reasoned:

The provisions of this section of the Law are mandatory, and the Board has no jurisdiction to accept an appeal filed after the expiration of the statutory appeal period absent limited exceptions not relevant herein. The filing of the late appeal was not caused by fraud or its equivalent by the administrative authorities, a breakdown in the appellate system, or by non-negligent conduct.

11

> Therefore, [Claimant's] appeal from the Referee's decision must be dismissed.

Bd. Op., 1/13/15, at 2. Claimant petitions for review.[7]

## II. Discussion
### A. 15-Day Appeal Period

Pursuant to Section 502 of the Law, a party has 15 days to appeal a decision furnished by the referee. 43 P.S. §822; see also Polakovic v. Unemployment Comp. Bd. of Review, 531 A.2d 852 (Pa. Cmwlth. 1987) (holding the 15-day statutory time limit for appeals from a referee's decision is mandatory). As untimeliness is a jurisdictional defect, courts cannot extend the time for taking an appeal as a matter of grace or mere indulgence. Sofronski v. Civil Serv. Comm'n, City of Phila., 695 A.2d 921 (Pa. Cmwlth. 1997). However, the Board can consider an untimely appeal in limited circumstances. Hessou v. Unemployment Comp. Bd. of Review, 942 A.2d 194 (Pa. Cmwlth. 2008). In such cases, the party seeking a late appeal must justify the delay in filing the appeal. Id. To do this, the party must show her untimely appeal resulted from extraordinary circumstances involving fraud or a breakdown in the administrative or judicial process. Id. In addition, the party may be entitled to an untimely appeal where she can show that non-negligent circumstances beyond the party's control caused the delay. Id. (citing Bass v. Commonwealth, 401 A.2d 1133 (Pa. 1979)).

---

[7] Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. Wise v. Unemployment Comp. Bd. of Review, 111 A.3d 1256 (Pa. Cmwlth. 2015).

12

## B. Argument/Analysis

On appeal, Claimant's "Statement of Questions Involved" raises issues pertaining to the merits of the referee's decisions following the July 2014 and October 2014 hearings on separate claims. More specifically, Claimant sets forth the following three issues:

> 1. Whether the [Board] erred in finding [Claimant] wrongfully gave her earnings and wages in referee hearing from July 14, 2014 and then did not in referee hearing held on May 15th and October 6th 2014.
>
> 2. Whether the referee should have been the same for two different claim cases and the referee for the untimely appeal?
>
> 3. Whether there was absolute proof that [Claimant] falsely falsified any earnings or wages in a knowingly way.

Pet'r's Br. at 6 (Statement of Questions Involved).

However, Claimant represented in her brief that "[s]he went to hearing in May 2014 with [E]mployer present and won the case." Pet'r's Br. at 8. Thereafter, when Claimant received the July 2014 order in the mail she thought she also won that case. Id. Claimant also believed that "claim credit for the weeks was denied" meant that the UC authorities lost the case. Id. When Claimant received another notice in September, she thought the UC authorities appealed the July 2014 decision. Id. Further, Claimant went to court in October and "got the decision for that order that she won." Id. When Claimant later received a letter from the Internal Revenue Service stating that her tax refund would be withheld, she called the UC authorities and discovered that the July 2014 and October 2014

13

orders were for different cases. Pet'r's Br. at 8-9. The UC authorities advised her to file a late appeal, which she did. Pet'r's Br. at 9.

As discussed above, the Board found that the referee's July 2014 order confused Claimant and that she believed it involved different benefit weeks. F.F. No. 9. Nonetheless, the Board further found: "There is no evidence that [Claimant] was misinformed by the [UC] authorities regarding her right or the necessity to appeal." F.F. No. 11.

Although the UC authorities may not have misinformed Claimant of her right to appeal the referee's July 2014 order, we view Claimant's confusion as much more significant. Claimant indicates she prevailed in another overpayment proceeding wherein a different referee ultimately found her testimony and earnings reports more credible than those provided by Employer. See Pet'r's Br. at 13. As such, Claimant apparently prevailed before one referee and lost before another referee in nearly simultaneous proceedings.

Further, based on our review of the record, we view the referee's July 2014 decision to be very complicated, technical, and somewhat confusing. As to the confusing part, the order does not explicitly state that the referee determined Claimant *ineligible for benefits* under Section 401(c) of the Law (invalid application based on false statements or omission of material facts). Further, the next sentence of the order states: "Claim credit for compensable weeks ending April 2, 2011 through July 30, 2011 is **DENIED**." This sentence does not clearly indicate it is adverse to Claimant. See Referee's Order, 7/24/14.

14

Here, several years passed before Claimant's receipt of benefits was challenged. This delay was beyond Claimant's control. Further, Claimant apparently prevailed in nearly simultaneous proceedings where a referee found her more credible than Employer regarding her past earnings. The contemporaneous inconsistent determinations by different referees were beyond Claimant's control. In addition to this confusing background, we conclude that the language of the referee's July 2014 decision contributed to extraordinary circumstances approaching a breakdown of the administrative process. The language in the July 2014 decision was beyond Claimant's control. At the very least, the delay in filing the appeal to the Board was caused by non-negligent circumstances beyond Claimant's control. As such, we believe Claimant is entitled to a late appeal to the Board. Bass.

Accordingly, we reverse the order of the Board and remand to the Board for disposition of Claimant's appeal on the merits.

_____
ROBERT SIMPSON, Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lynne A. Percinsky,           :
          Petitioner    :
                           :
         v.             :  No. 409 C.D. 2015
                           :
Unemployment Compensation   :
Board of Review,             :
          Respondent   :

## **O R D E R**

**AND NOW**, this 15th day of September, 2015, the order of the Unemployment Compensation Board of Review is **REVERSED** and this case is **REMANDED** for further proceedings consistent with the foregoing opinion. Jurisdiction is relinquished.

 

                                      _____

                                      ROBERT SIMPSON, Judge