# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas J. George,                          :
                    Petitioner             :
                                           :
        v.                                 :   No. 702 C.D. 2019
                                           :   SUBMITTED: December 13, 2019
Unemployment Compensation                  :
Board of Review,                           :
                    Respondent             :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED: April 13, 2020


        Thomas J. George (Claimant) petitions for review, *pro se*, of the May 16, 2019

Order of the Unemployment Compensation Board of Review (Board) affirming the

Referee's decision to deny Claimant unemployment compensation (UC) benefits.

The Board concluded that Claimant was financially ineligible for UC benefits under

Section 401(a) of the Unemployment Compensation Law because Claimant had

insufficient base-year wages outside of his highest quarter.[1]  We affirm the Board's

Order.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §
801(a).  Section 401(a) of the Law provides in relevant part:

   Compensation shall be payable to any employee who is or becomes unemployed
   and who . . . [h]as, within his base year, been paid wages for employment as
   required by section 404(c) of th[e Law] [and] . . . not less than thirty-seven per

## Background

Claimant filed an application for UC benefits in Pennsylvania, effective December 11, 2018, thereby establishing Claimant's base year as July 1, 2017 through June 30, 2018.[2] Bd.'s Finding of Fact (F.F.) No. 1.[3] Claimant had three different employers during his base year: Alcoa; Sherpa, LLC (Sherpa); and Resources Connection, LLC (Resources Connection). *Id.* No. 2.

_____

centum (37%) of the employee's total base year wages have been paid in one or more quarters, other than the highest quarter in such employee's base year.

43 P.S. § 801(a).

[2] A claimant's "base year" is defined as "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year." Section 4(a) of the Law, 43 P.S. § 753(a). Under Section 4(d) of the Law, the "calendar quarter" used to determine a claimant's base year is the "period of three consecutive calendar months ending on March thirty-first, June thirtieth, September thirtieth[,] or December thirty-first, or the equivalent thereof." 43 P.S. § 753(d). For the purpose of computing base-year wages, wages are allocated to the quarter in which they are paid, rather than to the quarter in which the claimant performed the work. Section 4(x) of the Law, 43 P.S. § 753(x).

In his brief, Claimant points out that both the Referee and the Board used an incorrect effective date for his UC application, because he filed his application on November 11, 2018, not December 11, 2018. *See* Record (R.) Item No. 1 (noting an application for benefits date of "11/11/18"); Notes of Testimony (N.T.), 1/28/19, at 2 (wherein the Referee states that Claimant's "application filed 11/11/18 required a base year, beginning July 1, [20]17 and ending June 30[], 2018"); *see also* 34 Pa. Code § 65.42 ("An application for benefits is effective on the first day of the calendar week in which the application is filed . . . ."). However, even with this apparent typographical error, Claimant's base year for determining his financial eligibility in Pennsylvania is still the same, because November and December both fall within the same calendar quarter. *See* 43 P.S. § 753(d).

[3] The Board largely adopted the Referee's factual findings, but it modified the dollar amounts in Finding of Fact Numbers 10 and 11 based on the evidence of record. Bd.'s Order, 5/16/19, at 1. The Board also added one of its own factual findings. *Id.* These modifications and additions to the factual findings are incorporated into the above discussion.

Claimant worked for Alcoa in Pennsylvania during the third quarter of (3Q) 2017 and earned gross wages in the amount of $27,162.86. *Id.* No. 3. Claimant worked for Sherpa in North Carolina during the fourth quarter of (4Q) 2017 and earned gross wages of $13,754. *Id.* No. 5.[4] Claimant also worked for Sherpa in North Carolina during the first quarter of (1Q) 2018 and earned gross wages of $17,566.68. *Id.* Finally, Claimant worked for Resources Connection in Pennsylvania during the second quarter of (2Q) 2018 and earned gross wages in the amount of $5,410.80. *Id.* Nos. 3, 4. At the time he filed his UC application in Pennsylvania, Claimant resided in Pennsylvania. *See* R. Item No. 1.

In May 2018, Claimant filed an application for UC benefits in North Carolina, establishing a base year of January 1, 2017 through December 31, 2017. Bd.'s F.F. No. 6; N.T., 1/28/19, Ex. 1. The North Carolina unemployment authorities determined that Claimant was eligible for UC benefits based on wages paid to him in 1Q, 2Q, 3Q, and 4Q 2017. Bd.'s F.F. No. 6. In establishing this claim, North Carolina used Claimant's wages from Alcoa in 1Q, 2Q, and 3Q 2017 (earned in Pennsylvania) and from Sherpa in 4Q 2017 (earned in North Carolina). *Id.* Nos. 7, 8. North Carolina paid UC benefits to Claimant in the amount of $350 per week for 12 weeks, which was the maximum number of benefit weeks that Claimant was eligible to collect UC benefits from North Carolina. Bd.'s Order, 5/16/19, at 1.

For his Pennsylvania UC claim, Claimant had available Pennsylvania wages from Resources Connection in the amount of $5,410.80,which were paid in 2Q 2018. Bd.'s F.F. No. 9. Claimant also had available wages from 1Q 2018 transferred from North Carolina in the amount of $17,767.50. *Id.* No. 10; Bd.'s Order, 5/16/19, at 1.

---

[4] Claimant resided in North Carolina during his employment with Sherpa. *See* N.T., 1/28/19, Exs. 2-4.

Claimant's base-year wages for the Pennsylvania claim totaled $23,178.30. Bd.'s F.F. No. 11; Bd.'s Order, 5/16/19, at 1.

On November 28, 2018, the local UC Service Center issued a Notice of Financial Determination, finding Claimant financially ineligible for UC benefits. *See* N.T., 1/28/19, at 2. Claimant timely appealed to the Referee, who held an evidentiary hearing on January 28, 2019.[5] Claimant appeared with a non-legal representative and testified on his own behalf. None of Claimant's employers appeared.[6]

At the hearing, Claimant entered into evidence several documents showing Claimant's wages from his three employers during his base year of July 1, 2017 through June 30, 2018. N.T., 1/28/19, at 4-6. Claimant testified that when he applied for UC benefits in North Carolina in May 2018, North Carolina used wages from his employment with Alcoa in Pennsylvania during 3Q 2017 to establish his financial eligibility in North Carolina. *Id.* at 7. Claimant testified that "after [his] 12 weeks of unemployment were up in North Carolina," he was not eligible to file for extensions under North Carolina law, for the following reason:

---

[5] The Notice of Financial Determination issued to Claimant is not included in the record. At the hearing, the Referee stated:

> [The Department of Labor and Industry (Department)] . . . did[ not] send us a copy of the [Notice of Financial] Determination, but I believe the one that was appealed was dated 11/28/2018, which found that the Claimant did not financially qualify for [UC] benefits; specifically, finding that he had insufficient wages outside the high[est] quarter to establish financial eligibility.

N.T., 1/28/19, at 2.

[6] In response to the Notice of Hearing, Resources Connection sent a letter to the Referee with Claimant's wage information, but stated that it would not participate in the hearing. R. Item No. 6.

4

Since I do not live in North Carolina, I had not lived in North Carolina in the past six months or my last wages were not earned in North Carolina, . . . I was ineligible to file an extension [in North Carolina,] and *[the North Carolina unemployment authorities told me] to file a claim in Pennsylvania for up to 14 weeks and North Carolina would transfer those wages back up to Pennsylvania.* That's what a representative from North Carolina told me.

. . .

. . . [S]o long as I had kept an accurate work search record and I was able to document that, which I had, and/or I had no criminal activity, I would be eligible for extensions of benefits for . . . up to a total of 26 weeks. So, an additional . . . 14 weeks, but I would have to, every four weeks, actually apply for extensions.

*Id.* at 8-9 (emphasis added). When asked which wages he was told would be transferred to Pennsylvania, Claimant replied, the "[t]hird quarter of 2017 and [the] fourth quarter of 2017." *Id.* at 8. Claimant testified that he exhausted his 12 weeks of UC benefits in North Carolina as of November 10, 2018, the day before he filed his UC application in Pennsylvania. *Id.* at 9.

Following the hearing, the Referee determined that Claimant's wages during his base year were insufficient to establish his financial eligibility for UC benefits under Section 401(a) of the Law. The Referee concluded as follows:

The Referee considered [C]laimant's argument that he had other wages during the base[-year] period. However, as reflected in the findings, *these wages were utilized to establish [C]laimant's eligibility for [UC] benefits in . . . North Carolina. Accordingly, they could not be used again to establish financial[] eligibility in Pennsylvania.* A review of North Carolina law revealed that [C]laimant's wages in the last two quarters of his base year ([3Q and 4Q] 2017) would have been used by North Carolina to establish a benefit rate and [the] duration of payments when he filed his claim [in North Carolina] in May 2018. Therefore, the Referee must conclude that *th[ose] wages have been previously*

5

*used for unemployment purposes and are not available for this [Pennsylvania] claim.*

Ref.'s Order, 2/1/19, at 2-3 (emphasis added). The Referee determined that without his 3Q and 4Q 2017 wages, Claimant was financially ineligible for UC benefits because he had insufficient base-year wages outside of his highest quarter under Section 401(a) of the Law. Therefore, the Referee affirmed the Service Center's determination.

Claimant timely appealed to the Board, which adopted the Referee's findings of fact and conclusions of law, with modifications. *See supra* note 3. In concluding that Claimant was financially ineligible for UC benefits, the Board specifically applied the Department's regulation at 34 Pa. Code § 65.133 (emphasis added), which states:

> For the purposes of this subchapter, *benefit credit shall be deemed to be unavailable whenever benefits have been exhausted*, terminated or postponed either for an indefinite period *or for the entire period in which benefits would otherwise be payable*, or whenever benefits are affected by the application of a seasonal restriction.

Applying this regulation to Claimant's application for UC benefits, the Board concluded:

> North Carolina used wages from Sherpa LLC and wages [C]laimant earned in Pennsylvania during [1Q, 2Q, 3Q, and 4Q] 2017 to determine [C]laimant's eligibility and concluded that [C]laimant was eligible for [12] weeks of UC benefits at $350.00 per week. [C]laimant thereafter received [12] weeks of benefits from North Carolina at $350.00 per week, thereby exhausting his benefits in North Carolina. *Therefore, [C]laimant had no available credits left from the four quarters in 2017 that could be used in calculating his financial eligibility in Pennsylvania . . . . The wages used by North Carolina cannot be used again in calculating [C]laimant's financial eligibility in Pennsylvania.*

6

Bd.'s Order, 5/16/19, at 1-2 (emphasis added). Therefore, the Board affirmed the Referee's decision. Claimant now petitions this Court for review.[7]

## Analysis

On appeal, Claimant asserts that the Board "capriciously disregarded" Claimant's "uncontradicted evidence[,] . . . which clearly established that he had available credits left from his four . . . quarters in 2017 that could have been used in calculating his financial eligibility in Pennsylvania." Claimant's Br. at 6-7. Specifically, Claimant argues that the Board ignored his unrefuted testimony that, after he exhausted his benefits in North Carolina, the North Carolina unemployment authorities advised him "to file a claim in Pennsylvania for up to 14 weeks and North Carolina would transfer th[e] wages [from 3Q and 4Q 2017] back up to Pennsylvania." N.T., 1/28/19, at 8. Thus, Claimant contends that he had 14 weeks of available benefit credits that could have been used to establish his financial eligibility in Pennsylvania.

In support of this assertion, Claimant relies exclusively on the Department's regulation at 34 Pa. Code § 65.132(a), which governs interstate claims for UC benefits. Section 65.132(a) provides:

> If a claimant files a claim against a state, and it is determined by the state that the claimant has available benefit credits in that state, then claims shall be filed only against that state as long as benefit credits are

---

[7] A claimant has the burden of proving his or her financially eligibility for UC benefits. *Pagliei v. Unemployment Comp. Bd. of Review*, 37 A.3d 24, 26 (Pa. Cmwlth. 2012). Where, as here, the party with the burden of proof was the only party to present evidence and did not prevail before the Board, our scope of review is limited to determining whether the claimant's constitutional rights were violated, whether the Board committed an error of law, or whether the Board capriciously disregarded competent evidence. *Unangst v. Unemployment Comp. Bd. of Review*, 690 A.2d 1305, 1307 n.3 (Pa. Cmwlth. 1997).

7

available in that state. *Thereafter, the claimant may file claims against any other state in which there are available benefit credits.*

34 Pa. Code § 65.132(a) (emphasis added).[8]  Claimant, however, overlooks 34 Pa. Code § 65.133(a), which explains when benefit credits become "unavailable" for purposes of interstate claims.  The regulation at 34 Pa. Code § 65.133(a) (emphasis added) states that "benefit credit[s] shall be deemed to be *unavailable whenever benefits have been exhausted*, terminated or postponed either for an indefinite period or *for the entire period in which benefits would otherwise be payable.*"

Here, Claimant filed a UC application in North Carolina in May 2018, establishing a base year for his North Carolina claim of January 1, 2017 through December 31, 2017.  N.T., 1/28/19, Ex. 1; Bd.'s F.F. No. 6.  The North Carolina unemployment authorities determined that, under North Carolina law, Claimant was entitled to UC benefits in the amount of $350 per week for a maximum of 12 weeks. Bd.'s Order, 5/16/19, at 1.  Claimant testified that he exhausted his 12 weeks of North Carolina benefits as of November 10, 2018.  N.T., 1/28/19, at 9.  Under 34 Pa. Code § 65.132(a), Claimant would be permitted to file a subsequent UC claim in Pennsylvania only if he had "available benefit credits" in Pennsylvania.  The Board found that, under 34 Pa. Code § 65.133(a), because North Carolina had used all of

---

[8] The Department's regulations do not define "benefit credits" as used in the context of interstate claims.  *See* 34 Pa. Code § 61.1.  However, Section 4(m.3) of the Law defines "partial benefit credit" as follows:

> **"Partial Benefit Credit"** means that part of the remuneration, if any paid or payable to an individual with respect to a week for which benefits are claimed under the provisions of this [Law], which is not in excess of thirty per centum (30%) of the individual's weekly benefit rate or six dollars whichever is the greater.  Such partial benefit credit if not a multiple of one dollar ($1) shall be computed to the next higher multiple of one dollar ($1).

43 P.S. § 753(m.3).

Claimant's wages from 2017, including those earned in Pennsylvania, to determine his financial eligibility in North Carolina, and because Claimant exhausted his benefit credits in North Carolina, "[C]laimant had no available credits left . . . that could be used in calculating his financial eligibility in Pennsylvania." Bd.'s Order, 5/16/19, at 1.

Claimant contends that the Board disregarded his unrefuted testimony that the North Carolina unemployment authorities told him he had "14 weeks" of available benefit credits from "the four quarters of 2017" that could have been used to establish his financial eligibility in Pennsylvania. Claimant's Br. at 7. However, even accepting as true Claimant's testimony that he was *told* that he had 14 weeks of available benefit credits for use in Pennsylvania, the Board correctly determined, based on the evidence of record, that he did not have available benefit credits. *See* Bd.'s Order, 5/16/19, at 1. In any event, the only relevant calendar quarters for determining Claimant's financial eligibility in Pennsylvania were the calendar quarters *in his Pennsylvania base year* – that is, 3Q and 4Q 2017 and 1Q and 2Q 2018. Bd.'s F.F. No. 1; *see* 43 P.S. § 753(a), (d). Thus, even if Claimant had available benefit credits from the "four quarters of 2017," there is no record evidence establishing that such credits fell within his Pennsylvania base year, which included only the *latter two quarters* of 2017.

Moreover, it is undisputed that North Carolina used Claimant's wages from 3Q and 4Q 2017 to determine his eligibility for UC benefits in that state, Bd.'s F.F. Nos. 7, 8; N.T., 1/28/19, Exs. 1, 2, and those two quarters also fell within Claimant's base year for his Pennsylvania claim. Under Pennsylvania law, when a claimant's quarterly wages are used to determine his or her eligibility for UC benefits in a prior base year, they "cannot be used again to calculate [the c]laimant's eligibility in [a]

9

subsequent application for UC benefits." *Logan v. Unemployment Comp. Bd. of Review*, 103 A.2d 451, 453 (Pa. Cmwlth. 2014); *see Lewis v. Unemployment Comp. Bd. of Review*, 454 A.2d 1191, 1193 (Pa. Cmwlth. 1983) ("[W]e would doubt that the legislature intended a claimant to be entitled to use the same quarter's wages twice – i.e.[,] for two successive benefit years."). Consequently, because North Carolina used Claimant's wages from 3Q and 4Q 2017 to establish his financial eligibility for UC benefits in that state, we conclude that Claimant could not use those same quarterly wages to establish his financial eligibility in Pennsylvania.[9]

---

[9] In its brief filed with this Court, the Board also asserts that "[f]ederal law prohibits wages used to determine claimant's financial eligibility in one [s]tate from being used again to establish [his or her] financial eligibility in another [s]tate." Bd.'s Br. at 5. In support of this argument, the Board cites numerous federal regulations governing the filing of combined-wage claims under an interstate arrangement. *Id.* at 7-10; *see* 20 C.F.R. § 616.1 (stating that under an interstate arrangement, "an unemployed worker with covered employment or wages in more than one [s]tate may combine all such employment and wages in one [s]tate, in order to qualify for benefits or to receive more benefits"). However, neither the Referee nor the Board relied on federal combined-wage-claim law in concluding that Claimant was financially ineligible for UC benefits in Pennsylvania, and the record before this Court does not indicate whether Claimant elected to file a combined-wage claim in North Carolina. *See* 20 C.F.R. § 616.7 (setting forth the requirements for a claimant who "elect[s] to file a [c]ombined-[w]age [c]laim").

Nonetheless, even if Claimant elected to file a combined-wage claim in North Carolina, we would still conclude that Claimant was prohibited from using his wages from 3Q and 4Q 2017 to establish his eligibility for UC benefits in Pennsylvania, since those wages were already used to establish his eligibility in North Carolina. *See* 20 C.F.R. § 616.10 ("Employment and wages which have been used under [an interstate] arrangement for a determination of [UC] benefits which establishes a benefit year *shall not thereafter be used by any [s]tate as the basis for another monetary determination of [UC] benefits*.") (emphasis added). The federal regulations further provide that "a claimant *will not* be considered to have *unused benefit rights* based on a benefit year which the claimant has established under a [s]tate or [f]ederal [UC] law *if[] . . . [t]he claimant has exhausted his/her rights to all benefits based on such benefit year*." 20 C.F.R. § 616.7(b)(1) (emphasis added). As explained above, because Claimant exhausted his benefit rights under North Carolina law before filing his Pennsylvania UC claim, he did not have unused benefit rights available to establish his eligibility for benefits in Pennsylvania.

10

This Court will disturb the Board's "adjudication for a capricious disregard of evidence . . . only where the [Board] has refused to resolve conflicts in the evidence, has not made essential credibility determinations[,] or has completely ignored overwhelming evidence without comment." *HPM Consulting v. Unemployment Comp. Bd. of Review*, 185 A.3d 1190, 1196-97 (Pa. Cmwlth. 2018); *see Wise v. Unemployment Comp. Bd. of Review*, 111 A.3d 1256, 1262 (Pa. Cmwlth. 2015) (stating that capricious disregard "occurs where the fact[]finder willfully and deliberately disregards competent and relevant evidence that one of ordinary intelligence could not possibly have avoided in reaching a result"). Contrary to Claimant's assertion on appeal, the Board did not ignore Claimant's evidence without comment or refuse to resolve conflicts in the evidence. Rather, it is evident from the Board's decision that it considered all of Claimant's testimonial and documentary evidence in determining his financial eligibility for UC benefits in Pennsylvania. The Board specifically relied on that evidence in modifying the Referee's factual findings and in making its own additional factual finding. *See supra* note 3. Despite Claimant's testimony that he was told that "North Carolina would transfer th[e] wages [from 3Q and 4Q 2017] back up to Pennsylvania," N.T., 1/28/19, at 8, the Board explained that, under the Department's regulations, those wages could not be used again to calculate his financial eligibility in Pennsylvania. Bd.'s Order, 5/16/19, at 1. Therefore, based on our review of the record, we conclude that the Board did not capriciously disregard competent evidence.

## Conclusion

Because Claimant exhausted his available benefit credits in North Carolina before filing his Pennsylvania claim, and because North Carolina used Claimant's wages from 3Q and 4Q 2017 to calculate Claimant's financial eligibility for UC

benefits in North Carolina, those wages could not be used again to establish Claimant's financial eligibility for UC benefits in Pennsylvania. Accordingly, we affirm the Board's Order.[10]

_____
ELLEN CEISLER, Judge

---

[10] We note that Claimant devotes the majority of his appellate brief to arguing that the Board violated his rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *See* Claimant's Br. at 8-13. However, Claimant does not raise a constitutional challenge in either his Petition for Review or his Statement of Questions Involved on appeal. Therefore, we conclude that he has waived this claim. *See Oliver v. Unemployment Comp. Bd. of Review*, 29 A.3d 95, 98 (Pa. Cmwlth. 2011) (stating that where claims that constitutional rights were violated are not raised in a claimant's petition for review, they are waived); Pa. R.A.P. 2116(a) ("No question will be considered [on appeal] unless it is stated in the statement of questions involved or is fairly suggested thereby.").

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas J. George,                             :
                        Petitioner            :
                                              :
        v.                                    :    No. 702 C.D. 2019
                                              :
Unemployment Compensation                     :
Board of Review,                              :
                        Respondent            :

# **O R D E R**

AND NOW, this 13th day of April, 2020, the Order of the Unemployment Compensation Board of Review, dated May 16, 2019, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge