HPM Consulting, : 
                Petitioner : 
                 : 
        v. : 
                 : 
Unemployment Compensation : 
Board of Review, :   No. 652 C.D. 2017
          Respondent :   Submitted: February 5, 2018

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE COVEY                           FILED: April 13, 2018

        HPM Consulting (HPM) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) April 25, 2017 order reversing the Referee's decision and granting Terry J. Jerin, Jr. (Claimant) UC benefits. The sole issue before this Court is whether Claimant is ineligible for UC benefits under Section 402(h) of the UC Law[1] (Law).[2]

        Claimant worked for HPM as a safety consultant from August 15, 2016 through October 28, 2016. HPM hired Claimant because he already possessed the skills and certifications necessary to perform a job for a client in Minnesota. Claimant's previous employers paid for his certifications; he did not pay for any himself. HPM set Claimant's pay rate and did not deduct taxes therefrom. At the job

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(h) (ineligibility for self-employment).

[2] In HPM's Statement of Questions Involved (Statement), HPM also includes the following issue: "Was [HPM's] Petition for Review with this Court filed untimely?" HPM Br. at 4. (Because HPM's brief pages are not numbered, the Court assigned page numbers beginning with HPM's Statement of Jurisdiction.) However, because this question has not been raised other than in HPM's Statement, it does not appear to be an issue before the Court. Notwithstanding, since the UCBR's order is dated April 25, 2017 and HPM filed its appeal on May 25, 2017, HPM's appeal was timely filed.

site, Claimant was supervised by a site safety manager who dictated Claimant's work hours and daily activities. The site manager required Claimant to participate in daily safety meetings, the morning flex/stretch program, badge in and out at the work site, complete daily safety reports, and submit a weekly timecard. Claimant has always worked as an employee and does not hold himself out as being in business for himself. Claimant separated from HPM on October 28, 2016.

On December 20, 2016, Claimant applied for UC benefits. On January 4, 2017, the Scranton UC Service Center determined that Claimant was eligible for UC benefits as he was not disqualified under Section 402(h) of the Law. HPM appealed and a Referee hearing was held on February 3, 2017. On February 7, 2017, the Referee reversed the UC Service Center's determination. Claimant appealed to the UCBR. On April 25, 2017, the UCBR reversed the Referee's decision and granted Claimant UC benefits. HPM appealed to this Court.[3]

HPM argues that Claimant is not eligible for UC benefits under Section 402(h) of the Law because he was not an employee of HPM,[4] but rather, he was self-employed as an independent contractor. Specifically, HPM contends that because: (1)

---

[3] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

[4] The UCBR expressly determined:

> While the [UCBR] concludes that [C]laimant was not self-employed, **the [UCBR] does not hold that [C]laimant was an employee of HPM**. Under Section 509 of the Law, 43 P.S. § 829, the [UCBR's] conclusion that [C]laimant was not self-employed and is eligible for benefits under Section 402(h) of the Law is not conclusive as to HPM's liability for contributions in [UC] taxes unless the Department [of Labor and Industry's] Office of UC Tax Services provided special notice that the [UCBR's] benefit decision would be conclusive on the contribution issue and HPM was given an opportunity to offer evidence on that issue.

UCBR Dec. at 2 (emphasis added).

2

the language of the agreement between HPM and Claimant specified that Claimant was an independent contractor; (2) Claimant was issued an Internal Revenue Service (IRS) Form 1099, as opposed to an IRS Form W-2; (3) Claimant paid for and provided his own certifications and qualifications; (4) Claimant established his hourly work rate; (5) HPM did not train or supervise Claimant; and, (6) Claimant was free to accept or decline assignments, Claimant was self-employed during the duration of his agreement with HPM. HPM relies exclusively on *Krum v. Unemployment Compensation Board of Review,* 689 A.2d 330 (Pa. Cmwlth. 1997), to support its position.

At the outset, this Court finds *Krum* inapposite for various reasons. First, the *Krum* Court clarified that "the [UCBR] expressly stated that it did not consider [S]ection 402(h) [of the Law] as its basis for denying benefits. Instead, the issue in [that] case [wa]s whether [the claimant] was an employee of [the agency.]" *Krum*, 689 A.2d at 333. In the instant case, the UCBR espoused the opposite: "While the [UCBR] concludes that [C]laimant was not self-employed, the [UCBR] does not hold that [C]laimant was an employee of HPM." UCBR Dec. at 2. Second, the *Krum* Court expressly opined: "We have disposed of [the claimant's] arguments in some detail and may summarize that, simply put, [the agency] is a referral agency and those it refers are not its employees under the referral arrangement." *Krum*, 689 A.2d at 333. Here, there is no record evidence nor did HPM argue that it was merely a referral agency.

Initially,

[p]ursuant to Section 402(h) [of the Law], a claimant is ineligible for [UC] benefits in any week '[i]n which [he] is engaged in self-employment.' 43 P.S. § 802(h). Section 402(h) [of the Law] does not define the term 'self-employment'; however, Section 4(*l*)(2)(B) of the Law defines 'employment', in pertinent part, as follows:

Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and

3

> will continue to be free from control or direction over the performance of such services both under [his] contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.
>
> 43 P.S. § 753(*l*)(2)(B).  The purpose of Section 4(*l*)(2)(B) [of the Law] 'is to exclude independent contractors from coverage.'  *Beacon Flag Car Co., Inc. (Doris Weyant) v. Unemployment Comp*[.] [*Bd.*] *of Review,* 910 A.2d 103, 107 (Pa. Cmwlth. 2006).  'This provision **presumes that an individual is an employee**.'  *Id.*  However, '**this presumption may be overcome if the putative employer sustains its burden of showing that the claimant was free from control and direction in the performance of** [**his**] **service** *and* **that, as to such service, was customarily engaged in an independent trade or business**.'  *Id.*  'Unless both of these showings are made, the presumption stands that one who performs services for wages is an employee.'  *Id.*

*Minelli v. Unemployment Comp. Bd. of Review,* 39 A.3d 593, 595-96 (Pa. Cmwlth. 2012) (italic and bold emphasis added).  Further, "in analyzing whether a claimant was an employee or independent contractor, we have repeatedly held that **the existence of an independent contractor agreement is not dispositive of the work relationship**," *Lello v. Unemployment Comp. Bd. of Review,* 59 A.3d 1153, 1159 (Pa. Cmwlth. 2013) (emphasis added).  Indeed, the UCBR's only reference to the contract is in finding of fact number two, wherein, the UCBR stated: "HPM hired [C]laimant on contract because he already possessed the skills and certifications necessary to perform the job for a client in Minnesota."  UCBR Dec. at 1.  This finding does not support a legal conclusion as to whether Claimant was self-employed or an employee.  Moreover, "[t]he mere fact **that Claimant did not receive** [a] **W-2 Form**[] . . . **is not conclusive of self-employment**."  *Clark v. Unemployment Comp. Bd. of Review*, 129 A.3d 1272, 1277-78 (Pa. Cmwlth. 2015) (emphasis added).

4

With respect to the second prong of Section 402(h) of the Law,[5] Claimant related: "I never in my life have been a [Form] 1099 employee. I have no desire to be a [Form] 10[99] employee. I do not perform self -- I do not solicit work for myself, and it's something I have no desire to do." R.R. at 56. In fact, when Employer's witness was asked whether he had any reason to know whether Claimant "ever performed or is currently performing similar type of service for anybody else," Employer's witness responded: "The same type of work as far as – yeah, he does [sic] the same type of work for previous years. **As far as an independent, I'm not clear on that**." R.R. at 54 (emphasis added).

In addition, Claimant did not pay for his own certifications and qualifications. Claimant explained:

> The companies I worked for paid for the certificates. When I worked for Shaul (phonetic) they [sic] sent me to training. When I worked for Day Zimmerman, they [sic] provided me with my first aid [cardiopulmonary resuscitation training]. It was part of the (inaudible). I had to have it when I was on[-]site and they paid for it.

R.R. at 58. Finally, Claimant testified that HPM set his rate of pay. Specifically, Claimant expounded: "I was sent a contract that stated I would get $35 an hour. I did not set the rate of $35 an hour; [HPM] did." R.R. at 56. Claimant clarified: "Why would I set a rate for $5 an hour less than I normally work when federal taxes were not taken out?" *Id.*

The law is well-established:

> [T]he [UCBR] is the ultimate fact-finder in [UC] matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence**. It is irrelevant whether the record contains evidence to support findings other than those made by the fact-**

---

[5] For reasons that will become clear herein, we will address the second prong before the first prong.

5

**finder; the critical inquiry is whether there is evidence to support the findings actually made**. Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal.[6]

*Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (emphasis added; citations omitted). Here, the UCBR concluded, "[b]ased on [C]laimant's **credible** testimony, none of which HPM disputed,"[7] "[C]laimant does not hold himself out as being in business for himself and has always worked as an employee." UCBR Dec. at 2 (emphasis added).

The Dissent asserts that the UCBR **capriciously disregarded** the following evidence: two contracts between Claimant and HPM, an email and Claimant's Questionnaire.[8] First, the Dissent maintains: "HPM's amended petition for

---

[6] This Court has explained:

> Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party, . . . giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

*Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999).

[7] The Dissent maintains the UCBR erred by stating HPM did not dispute that Claimant did not hold himself out as being in business for himself. However, as stated above, when Employer's witness was asked whether he had any reason to know whether Claimant "ever performed or is currently performing similar type of service for anybody else," Employer's witness responded: "The same type of work as far as – yeah, he does [sic] the same type of work for previous years. **As far as an independent, I'm not clear on that**." R.R. at 54 (emphasis added). The Dissent further asserts: "The [UCBR]'s characterization was not, as the [M]ajority observes, limited to the narrower issue of whether Claimant held himself out as being in business for himself." Dissenting Op. at 5 n.4. However, the Majority did not limit the UCBR's statement to that issue, but rather, the Majority was citing the UCBR's conclusion in reference to that issue. Thus, the Majority limited the quote for that purpose only.

[8] As stated above, the issue is not whether the record contains evidence to support findings other than those made by the UCBR, but rather, whether there is evidence to support the findings actually made. *See Ductmate Indus.* Here, reviewing the record evidence "in the light most favorable to [Claimant]," as we must because Claimant was the prevailing party below, and "giving [Claimant] the benefit of any inference that can logically and reasonably be drawn from the evidence," this Court

6

review states that the [UCBR] erred by failing to consider a litany of evidence, including Claimant's written agreement with HPM." Dissenting Op. at 1 n.2. However, HPM does not raise this averment as an issue in its Statement of Questions Involved, *see* HPM Amended Br. at 4,[9] nor does HPM discuss the same in its Summary of Argument, *see* HPM Amended Br. at 7-8, or in its Argument.[10] *See* HPM Amended Br. at 8-12.

> [W]hen a party appeals, but fails to address an issue in the brief, the issue is waived. *McDonough* [*v. Unemployment Comp. Bd. of Review,* 670 A.2d 749 (Pa. Cmwlth. 1996)].

holds that there is substantial evidence to support the UCBR's findings. *Sanders v. Unemployment Comp. Bd. of Review,* 739 A.2d 616, 618 (Pa. Cmwlth. 1999).

The Dissent rejoins: "The foregoing axiom of appellate review does not mean that we may abandon our duty to remand 'where the factfinder has refused to resolve conflicts in the evidence . . . or has completely ignored overwhelming evidence without comment.' *Wise v. Unemployment Comp*[.] [*Bd.*] *of Review*, 111 A.3d 1256, 1263 (Pa. Cmwlth. 2015)." Dissenting Op. at 7 n.6. As the UCBR did resolve the conflicts in evidence and, as discussed herein, did not ignore any evidence, remand for that purpose is not required. Further, the Dissent cites *Wise* to support its position that this Court has a duty to remand where the fact-finder refuses to resolve conflicts in the evidence or completely ignores overwhelming evidence. However, in *Wise* the claimant/appellant specifically raised the issue of capricious disregard of evidence and the quoted portion was merely reciting the only circumstance wherein an agency's adjudication can be disturbed for a finding of capricious disregard. Such circumstance is not present here.

[9] HPM's Amended Brief's pages are not numbered, thus this Court will refer to the page containing the Statement of Jurisdiction as page one and continue consecutively.

[10] The Dissent insists that HPM raised the issue of capricious disregard of evidence by pointing to the fact that "HPM argue[d], generally, that the [UCBR] erred in ruling that Claimant is not ineligible for benefits under Section 402(h) of the Law." Dissenting Op. at 1 n.2. Clearly, that is not a capricious disregard of evidence argument. Further, the Dissent claims "HPM specifically cites two pieces of evidence **the** [**UCBR**] **did not address**: the agreement between Claimant and HPM that explicitly states he was an independent contractor and 'correspondence' he sent to HPM acknowledging both his independent contractor and 1099 status." Dissenting Op. at 2 n.2 (emphasis added). However, HPM never asserted that anything was "not addressed", but rather HPM contended that the independent contractor agreement and the fact that Claimant was a 1099 employee support the first prong of *Krum*. Both of these factors were testified to by Claimant. Finally, the Dissent states: "HPM identified the [UCBR]'s error as **the disregard of critical evidence**, *i.e.*, the written contract[,]" Dissenting Op. at 2 n.2 (emphasis added), but HPM never made that argument nor anywhere in its brief used any of the above bolded words as the Dissent claims. Notably, the Dissent does not cite to HPM's brief with respect to those words.

7

This Court, in *McDonough,* held that **an issue raised in the Petition for Review but not addressed in the petitioner's brief on appeal, was waived**[.]

*Jimoh v. Unemployment Comp. Bd. of Review,* 902 A.2d 608, 611 (Pa. Cmwlth. 2006) (emphasis added). Accordingly, this issue is not properly before the Court.

Second, the Dissent opines: "First and foremost, HPM **offered** copies of two contracts it executed with Claimant." Dissenting Op. at 5 (emphasis added). However, HPM never identified the contracts at the hearing or had Claimant and/or its witness testify therefrom.[11] Notwithstanding, even if the two contracts between Claimant and HPM, the email and Claimant's Questionnaire were considered, the result would be the same. The contracts contain ample evidence supporting Claimant's presumptive employee status which HPM, who had the burden, did not overcome. For example, the contracts specified Claimant's hourly rate of pay as well as his overtime rate of pay, and per diem expenses. *See* R.R. at 37, 45. In addition, the contracts expressed that Claimant's home trips "will be scheduled with approval from the job site" and he consented to drug testing at the jobsite. *See* R.R. at 37. Further, they provided that Claimant was responsible for his steel tip boots and clothing but would be furnished all necessary equipment at the jobsite. *Id.* With respect to the email,

---

[11] The Dissent asserts that the contracts were entered into evidence as Exhibit 10 at the beginning of the Referee hearing. However, the exhibits are not attached to the Hearing Transcript and the contracts and the email are included with documents labeled "Employer Documents for Telephone Hearing." R.R. at 35. Further, Exhibit 10 was referred to as "letters sent from the attorney or Claimant." R.R. at 52. Moreover, the contracts and the email were never specifically identified or testified from at the hearing.

The Dissent maintains that "[t]he 46 pages of relevant documents faxed by the moving party to the Referee as 'employer exhibits to be included' in the record were ignored by the [UCBR]. R.R. 36. This is yet another reason to remand for a review of the complete record." Dissenting Op. at 5 n.5. However, the fact that 46 pages of documents *may* have been admitted, does not translate to a remand to consider said documents. The Referee is not an adversary for HPM and is not required to comb through and comment on documents that were not testified to or argued about before him. As HPM's Counsel did not refer to the documents, the UCBR was not required to address them.

wherein Claimant acknowledges he is an independent contractor based on the contract, it is no more dispositive than the contract itself stating it therein.

Relative to Claimant's Questionnaire, Claimant's answers support a finding that Claimant was an employee as opposed to an independent contractor. Specifically, Claimant stated that he had no financial investment in his employment, he was not customarily engaged in an independently established trade, occupation, profession or business, he did not set his own work hours, he could not begin and end a job independently and he was not free from direction and control in the performance of his work. *See* R.R. at 10. Further, Claimant communicated in his Questionnaire answers that he did not provide his own tools, he did not buy his own supplies, and most importantly, **he was not considered an independent contractor at the time he did this work before working in his current occupation.** *See* R.R. at 11.

> Disturbing an agency's adjudication for a capricious disregard of evidence is appropriate only where the factfinder has refused to resolve conflicts in the evidence, has not made essential credibility determinations or has completely ignored overwhelming evidence without comment. *Hinkle v. City of Philadelphia,* 881 A.2d 22, 27 (Pa. Cmwlth. 2005). In *Hinkle,* this Court, citing *Wintermyer* [*v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002)], explained that:
>
> > 'Capricious disregard' then is just another name for the agency abusing its discretion and is an error of law when the agency fails to give an indication that it has examined countervailing substantive testimony that had to be considered at arriving at its decision.
> >
> > The capricious disregard standard then is nothing more than a shorthand way of referring to an amalgam of existing overlapping legal and constitutional standards mentioned above that safeguard against arbitrariness by state and local administrative agencies by requiring a meaningful explanation of why the losing party's overwhelming evidence was not accepted.

9

*Id.* (footnote omitted). **An appellate court conducting a review for capricious disregard of material, competent evidence may not reweigh the evidence or make credibility determinations**.

Applying the above principles to the case *sub judice,* we conclude that the [UCBR] did not capriciously disregard competent and relevant evidence. It did not ignore [HPM's] 'overwhelming evidence' without comment.

*Wise v. Unemployment Comp. Bd. of Review,* 111 A.3d 1256, 1263 (Pa. Cmwlth. 2015) (emphasis added; citations omitted).

This Court holds that HPM did not overcome the strong presumption of Claimant's status as an employee. *See Famularo Catering, Inc. v. Dep't of Labor & Indus.,* 125 A.3d 866, 869 (Pa. Cmwlth. 2015) (quoting *Electrolux Corp. v. Dep't of Labor & Indus., Bureau of Employer Tax Operations,* 705 A.2d 1357, 1359–60 (Pa. Cmwlth. 1998) (emphasis added) ("[A] person receiving remuneration for services rendered is *presumed* to be employed and therefore to have 'employment' within the meaning of the [Law] . . . .")). "[T]he record here lacks any evidence that Claimant customarily engaged in an independent business . . . ." *Jia v. Unemployment Comp. Bd. of Review,* 55 A.3d 545, 549 (Pa. Cmwlth. 2012). "Claimant's testimony is clear that he was not so engaged, and there is no contrary evidence." *Id.* "The test an employer must satisfy to overcome the presumption of an employment relationship is simply not met here." *Id.*

Notwithstanding, relative to the first prong of Section 402(h) of the Law, the UCBR found as facts:

5. At the job site, [Claimant] was supervised by the site safety manager, who dictated [Claimant's] work hours and daily activities.

6. The site manager required [Claimant] to participate in daily safety meetings, the morning flex/stretch program, badge in and out at the work site, complete daily safety reports, and submit a weekly timecard.

10

UCBR Dec. at 1.[12]  Based thereon, the UCBR concluded that Claimant "was not free from direction and control."  UCBR Dec. at 2.

The Dissent cites *C E Credits OnLine v. Unemployment Compensation Board of Review*, 946 A.2d 1162, 1168 (Pa. Cmwlth. 2008), for the factors to be considered in determining the issue of control.  *See* Dissenting Op. at 3.  Specifically, the Dissent quotes the following factors:

> [W]hether there is a fixed rate of remuneration; whether taxes are withheld from the claimant's pay; whether the [putative] employer supplies the tools necessary to carry out the services; whether the [putative] employer provides on-the-job training; and whether the [putative] employer holds regular meetings that the [individual is] expected to attend.  *C E Credits OnLine* . . . , 946 A.2d [at] 1168 . . . .

Dissenting Op. at 3.  These factors reveal that HPM and/or its client, did in fact control and direct Claimant's work performance.  First, Claimant was paid a "fixed rate of remuneration[,]" HPM and/or its client "supplie[d] the tools necessary to carry out the services[,]" and Claimant was expected to attend daily safety meetings.  Dissenting Op. at 3 (quoting *C E Credits OnLine*, 946 A.2d at 1168).  HPM had the burden to prove that Claimant was free from control or direction over his work performance, and HPM did not meet its burden.  Accordingly, the first prong of Section 402(h) of the Law was not met.

---

[12] The Dissent opined:

> First, it is unclear that [Claimant's on-site supervisor Brad] Hoke's directives were anything more than the quality control directive that is imposed on any independent contractor.  *See C E Credits Online* [*v. Unemployment Comp. Bd. of Review*]*,* 946 A.2d [1162,] 1169 [(Pa. Cmwlth. 2008)].  Second, it is not clear whether Hoke was issuing directives on behalf of HPM or [its client] AZCO, Inc.

Dissenting Op. at 4.  However, the UCBR's above-quoted findings are clearly more than quality control and it is irrelevant whether Hoke's directives were on behalf of HPM or AZCO, Inc., only that Claimant was under the direction and control of another.

11

However, it is not clear from the record whether Claimant's on-site supervisor Brad Hoke (Hoke) was an HPM employee. Claimant testified that he did not know who paid Hoke, *see* R.R. at 57, and HPM's witness declared that although Hoke was not an HPM employee, HPM contracted with Hoke to service that client. *See* R.R. at 59. Therefore, since it was not established under whose direction and control Claimant was subject, the identity of Claimant's employer remains undetermined. Accordingly, as stated by the UCBR, the issue of whether HPM was Claimant's employer was not resolved. *See* UCBR Dec. at 2.

Further, according to the record, Claimant declined two additional jobs HPM offered him after the Minnesota client's job was completed. *See* R.R. at 54. If HPM is determined to be Claimant's employer, HPM is to be given the opportunity to argue that Claimant is ineligible for UC benefits pursuant to Section 402(b) of the Law, 43 P.S. § 802(b), because he did not have a necessitous and compelling reason to decline those jobs. HPM did not have the opportunity to argue Claimant's ineligibility for benefits under Section 402(b) of the Law or any other applicable provision because the "Notice of Telephone Hearing" specified that the only issue before the Referee was "[w]hether [C]laimant was engaged in self-employment." R.R. at 31. Accordingly, this Court remands the matter to the UCBR for additional fact-finding to determine whether HPM is liable for UC benefits as Claimant's employer and, if so, whether Claimant is ineligible for benefits under Section 402(b) of the Law and/or any other disqualifying Sections of the Law.

12

For all of the above reasons, the UCBR's order finding that Claimant was not self-employed is affirmed, the UCBR's order granting Claimant UC benefits is reversed, and the matter is remanded for additional fact-finding in accordance with this opinion.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| HPM Consulting, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Unemployment Compensation | : | |
| Board of Review, | : | No. 652 C.D. 2017 |
| Respondent | : | |

## O R D E R

AND NOW, this 13th day of April, 2018, the Unemployment Compensation (UC) Board of Review's (UCBR) April 25, 2017 order finding Terry J. Jerin, Jr. (Claimant) not ineligible for UC benefits under Section 402(h) of the UC Law, 43 P.S. § 802(h), is affirmed, and the UCBR's order granting Claimant UC benefits is reversed.

The matter is remanded to the UCBR for further fact-finding consistent with this opinion.

Jurisdiction is relinquished.


_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| HPM Consulting, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 652 C.D. 2017 |
| | : | Submitted: February 5, 2018 |
| Unemployment Compensation Board | : | |
| of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE ELLEN CEISLER, Judge

DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: April 13, 2018

Respectfully, I dissent.  In rejecting the Referee's holding that Terry J. Jerin, Jr. (Claimant) was an independent contractor under Section 402(h) of the Unemployment Compensation Law (Law), 43 P.S. §802(h),[1] the Unemployment Compensation Board of Review (Board) capriciously disregarded key evidence introduced at the Referee's hearing.[2]  Determining whether Claimant was an

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(h).

[2] "A capricious disregard of evidence occurs where the fact finder willfully and deliberately disregards competent and relevant evidence that one of ordinary intelligence could not possibly have avoided in reaching a result." *Wise v. Unemployment Compensation Board of Review*, 111 A.3d 1256, 1262 (Pa. Cmwlth. 2015).  The Pennsylvania Supreme Court has explained that review for capricious disregard of competent evidence is an "appropriate component of appellate consideration in every case in which such question is properly before the court." *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002).

I disagree with the majority's assertion that HPM Consulting (HPM) did not raise this issue. HPM's amended petition for review states that the Board erred by failing to consider a litany of evidence, including Claimant's written agreement with HPM.  In its brief, HPM argues, generally, that the Board erred in ruling that Claimant is not ineligible for benefits under Section 402(h) of the Law.  *See, e.g.*, HPM Brief at 6 (Statement of Question Involved), 9 (Summary of Argument),

employee of HPM Consulting (HPM) or self-employed as an independent contractor requires consideration of all the evidence. Accordingly, I would vacate the Board's order in its entirety and remand for further findings.

Section 402(h) of the Law provides that an employee shall be ineligible for compensation for any week "[i]n which he is engaged in self-employment[.]" 43 P.S. §802(h). The Law does not define the term "self-employment"; however, Section 4(*l*)(2)(B) of the Law defines the term "employment," in pertinent part, as follows:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. §753(*l*)(2)(B). In sum, the statutory presumption that an individual earning wages for services performed is an employee may be overcome by a showing that: (a) the individual was free from control and direction in the performance of his work; and (b) in the performance of his services, the individual was customarily engaged in an independently established business or occupation. *Beacon Flag Car Company, Inc. (Doris Weyant) v. Unemployment Compensation Board of Review*, 910 A.2d 103, 107 (Pa. Cmwlth. 2006).

---

and 10-11 (Argument). In the argument section of its brief, HPM specifically cites two pieces of evidence the Board did not address: the agreement between Claimant and HPM that explicitly states he was an independent contractor and "correspondence" he sent to HPM acknowledging both his independent contractor and 1099 status. *Id*. at 13.

HPM identified the Board's error as the disregard of critical evidence, *i.e.*, the written contract. The issue is not waived because HPM did not use the adjective, "capricious."

MHL-2

In this case, the first prong, *i.e.*, the issue of control, involves a determination of whether HPM, or the client, AZCO, Inc., had the right to control Claimant's work and the manner in which he performed it. *Krum v. Unemployment Compensation Board of Review*, 689 A.2d 330, 332 (Pa. Cmwlth. 1997). In reviewing the question of control, courts consider many factors, such as

> whether there is a fixed rate of remuneration; whether taxes are withheld from the claimant's pay; whether the [putative] employer supplies the tools necessary to carry out the services; whether the [putative] employer provides on-the-job training; and whether the [putative] employer holds regular meetings that the [individual is] expected to attend.

*C E Credits OnLine v. Unemployment Compensation Board of Review*, 946 A.2d 1162, 1168 (Pa. Cmwlth. 2008). No single factor is controlling, and, therefore, the ultimate conclusion must be based on the totality of the circumstances. *Resource Staffing, Inc. v. Unemployment Compensation Board of Review*, 961 A.2d 261, 264 (Pa. Cmwlth. 2008).

It is unclear from the record whether any person controlled the manner in which Claimant performed his services as a "Traffic site manager" at the job site in Minnesota. Certified Record (C.R.), Item No. 2, at 1; Reproduced Record at 10 (R.R. __). This includes both HPM and AZCO, Inc. In his employee questionnaire, Claimant stated that he was not supervised "regularly or closely." *Id.* In his testimony, Claimant stated that Brad Hoke was the site manager, and he was not sure "who pays Mr. Hoke's salary." Notes of Testimony, 2/3/2017, at 8 (N.T. __); R.R. 57. Claimant testified that Hoke determined where on the job site he was to do the work of a traffic site manager. Claimant also described an incident where Hoke yelled at him for leaving the job site to get a raincoat for another worker.

The Referee found that the relationship between HPM and Claimant was that of an independent contractor. In reversing, the Board focused upon Claimant's testimony about Hoke. The questions are two-fold. First, it is unclear that Hoke's directives were anything more than a quality control directive that is imposed on any independent contractor. *See C E Credits OnLine,* 946 A.2d at 1169.[3] Second, it is not clear whether Hoke was issuing directives on behalf of HPM or AZCO, Inc.

More problematic is the Board's determination that Claimant was eligible for benefits under Section 402(h) because the Board did not address evidence critical to that determination. In reversing the Referee's decision to deny benefits under Section 402(h), the Board explained:

> Based on [C]laimant's credible testimony, *none of which HPM disputed*, the Board concludes that [C]laimant was not self-employed. [C]laimant was directly and closely supervised on the job site and, therefore was not free from direction and control. Further, [C]laimant does not hold himself out as being in business for himself and has always worked as an employee.

---

[3] In *C E Credits OnLine*, this Court explained:

> "[C]ontrol of the result only and not the means of accomplishment" [does] not transform an independent contractor relationship into an employer-employee relationship. Every job, whether performed by an employee or by an independent contractor, has parameters and expectations. "Control" for purposes of Section 4(*l*)(2)(B) of the Law is not a matter of approving or directing the final work product so much as it is a matter of controlling the means of its accomplishment.

*C E Credits OnLine*, 946 A.2d at 1169 (quoting *J. Miller Co. v. Mixter*, 277 A.2d 867, 871 (Pa. Cmwlth. 1971)).

Board Adjudication at 2 (emphasis added).[4]  The Board's statement that HPM did not dispute Claimant's testimony is simply incorrect.  HPM offered considerable evidence on that point, but the Board capriciously disregarded it.

First and foremost, HPM offered copies of two contracts it executed with Claimant, and they were admitted into the record.[5]  The first contract concerned Claimant's engagement by HPM to provide safety consulting services to AZCO at a jobsite in Iowa for five months beginning February 8, 2016.  The second contract related to the AZCO project at issue in this case, which commenced in Minnesota on August 15, 2016, and lasted approximately three months.  Both contracts contained the following relevant provisions:

---

[4] The first sentence of the block-quoted text states that the Board found Claimant's testimony as to the ultimate issue of his employment status undisputed.  The Board's characterization was not, as the majority observes, limited to the narrower issue of whether Claimant held himself out as being in business for himself.  *See* Majority slip op. at 6 n.8.

[5] Contrary to the majority's assertion, the contracts are part of the certified record.  *See* C.R., Item No. 8; R.R. 36-47.  Prior to the telephonic hearing, HPM's attorney faxed relevant documents to the Referee, which included the contracts.  At the inception of the hearing, the Referee admitted the documents in C.R. Item No. 8 into evidence as exhibit number 10, identified as the "letters sent from the attorney," *i.e.*, HPM's attorney.  N.T. 3; R.R. 52.  The majority discounts the contracts because they were not attached to the hearing transcript and HPM did not have its witness testify about them.

First, the contracts were "made part of the record."  *Id.*  The Referee specifically asked Claimant if he had "any objection to these items being made part of the record?," to which Claimant responded, "I do not."  *Id.*  There was no need for testimony about documents already admitted.  Further, the contracts are the best evidence of their content.

Second, this was a telephonic hearing; there was no court reporter present.  No transcript is made unless an appeal is filed.  The very nature of unemployment compensation proceedings, as our Supreme Court has stated, is "by design, brief and informal in nature."  *Harkness v. Unemployment Compensation Board of Review*, 920 A.2d 162, 168 (Pa. 2007).

The 46 pages of relevant documents faxed by the moving party to the Referee as "employer exhibits to be included" in the record were ignored by the Board.  R.R. 36.  This is yet another reason to remand for a review of the complete record.

MHL-5

The jobsite [client] will dictate the hours needed on site and will be adjusted depending upon the needs at the site. Your hours worked should be submitted via fax to [HPM] every Monday morning[;]

You will furnish your own steel toe boots and proper clothing. AZCO Inc. will provide you with the rest of the necessary PPE [Personal Protective Equipment] at the job site[;]

You understand and agree that you are working as a 1099 contractor through HPM and are solely responsible for any personal federal and state tax obligations. HPM is not responsible for and is not withholding monies for tax liabilities on your behalf and you will receive an IRS Form 1099 from HPM at the end of the calendar year. It is understood by both parties that no vacation, holidays, sick time, health insurance, profit sharing, unemployment benefits, etc. will be part of this contract[;]

You shall perform this contract as an independent contractor and not an employee of HPM. Nothing in this contract shall be construed to be inconsistent with your independent contractor status …. It is understood that HPM does not use your services exclusively. It is further understood that you are free to contract for similar services to be performed for other contractors.

C.R., Item No. 8, at 3, 11; R.R. 37, 45.

A written agreement that describes the claimant as an independent contractor, although not dispositive, is critical to the independent contractor analysis. *Stage Road Poultry Catchers v. Department of Labor and Industry, Office of Unemployment Compensation, Tax Services*, 34 A.3d 876, 889 (Pa. Cmwlth. 2011). The above contract terms are certainly relevant to deciding whether Claimant was an independent contractor or an employee of HPM. By not addressing the contract language, the Board capriciously disregarded relevant evidence.

HPM also produced an email from Claimant to HPM's vice president regarding the Iowa assignment that stated: "I reviewed the contract and am aware

that the position is independent contractor." C.R., Item No. 8 at 13; R.R. 47. This email contradicts Claimant's "credible" testimony that he was never a "1099 employee." N.T. 7; R.R. 56. The Board erred by capriciously disregarding this evidence, which was relevant to Claimant's employment status.

Finally, the Board did not consider Claimant's own questionnaire, which contains statements that contradict his testimony that he was an HPM employee. For example, on his questionnaire, Claimant stated that (1) he was at risk of sustaining a profit or loss; (2) his work was not supervised regularly or closely; (3) he was paid as a 1099 employee; (4) he signed a contract stating he was an independent contractor; (5) he was able to "perform these identical services, or other services, for others independently"; (6) his "present working arrangement permit[ted him] to work for several individuals at the same time"; and (7) the "site superintendent, the owner" is responsible for hiring and firing. C.R., Item No. 2; R.R. 10-11. The Board should have considered Claimant's responses in assessing his credibility and deciding the Section 402(h) issue.[6]

For these reasons, I would vacate the Board's adjudication that Claimant is not self-employed and remand for the Board to consider and address all of the evidence in the record.

_____
MARY HANNAH LEAVITT, President Judge

---

[6] The majority excuses the Board's legal error by stating that we must affirm if there is substantial evidence to support the Board's findings. *See* Majority slip op. at 6 (citing *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008)). The foregoing axiom of appellate review does not mean that we may abandon our duty to remand "where the factfinder has refused to resolve conflicts in the evidence … or has completely ignored overwhelming evidence without comment." *Wise v. Unemployment Compensation Board of Review*, 111 A.3d 1256, 1263 (Pa. Cmwlth. 2015).