# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Subcontracting Concepts, Inc.,    :
       Petitioner   :
           :
    v.        :
           :
Unemployment Compensation   :
Board of Review,      : No. 333 C.D. 2020
      Respondent  : Argued:  November 9, 2020

BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
     HONORABLE ANNE E. COVEY, Judge (P.)
     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY         FILED:  December 16, 2020

    Subcontracting Concepts, Inc. (SCI) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) March 2, 2020 order affirming the Referee's decision and determining that Justin M. Langer (Claimant) is not disqualified from receiving UC benefits under Section 402(h) of the UC Law (Law).[1]  There are two issues before this Court: (1) whether the UCBR applied the correct legal standard in addressing Section 4(*l*)(2)(B)(b) of the Law;[2] and (2) whether the UCBR's decision is supported by substantial evidence.[3]  After review, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(h) (relating to self-employment).

[2] 43 P.S. § 753(*l*)(2)(B)(b) (relating to whether an individual is customarily engaged in an independently established trade, occupation, profession or business).

[3] SCI included the additional issue of whether the UCBR erred by deciding that Claimant was not customarily engaged in an independent trade, profession, occupation or business in its questions presented; however, that issue is subsumed by the first issue.  *See* SCI Br. at 4.

SCI is a third-party administrator servicing the logistics industry and has an office located in Queensbury, New York. On July 24, 2019, Claimant signed an Owner/Operator Agreement to perform delivery services with SCI (Agreement), wherein Claimant represented that he was an independent contractor. The Agreement provided that Claimant could accept or reject assignments from SCI's customers. In addition, the Agreement set forth that Claimant was required to have a valid driver's license, vehicle registration, and automobile insurance in order to perform his services and that he was responsible for all of his own expenses, such as insurance, vehicle registration, vehicle maintenance, gas, tolls, and parking. The Agreement expressly included: "The results achieved are more important than the methods used by which the results are achieved[.]" Agreement ¶14.

SCI's customer paid SCI for work Claimant performed, and SCI then paid Claimant. In order to receive payment, Claimant had to submit an invoice to SCI. SCI did not supervise Claimant's work. Claimant was free to offer his services to others without restriction. SCI did not set Claimant's pay rate, rather, Claimant negotiated his pay rate with SCI's customer. SCI did not withhold taxes from Claimant's pay and Claimant would receive a tax form 1099 at the year's end. Claimant filed for an Employer Identification Number (EIN) and indicated in the application therefor that he was a sole proprietor. Claimant was required to maintain, and did obtain, occupational accident insurance.

Claimant performed auto parts delivery services for SCI's customer, NAPA Auto Parts (NAPA). NAPA, not SCI, set Claimant's hours, those being Monday through Friday, 8:00 a.m. until 5:00 p.m. If it was slow on a particular day, NAPA would send Claimant home early. NAPA subsequently hired another individual to perform its auto parts delivery services and, therefore, no longer needed Claimant's services. After NAPA no longer needed his services, Claimant searched

2

for other delivery jobs in his area, but they all required a commercial driver's license (CDL).

On September 15, 2019, Claimant applied for UC benefits. On October 16, 2019, the Altoona UC Service Center denied Claimant UC benefits under Section 402(h) of the Law and determined a fault overpayment under Section 804(a) of the Law.[4] Claimant appealed from the UC Service Center's decision. A Referee held a hearing. On December 5, 2019, the Referee reversed the UC Service Center's decision. SCI appealed to the UCBR. On March 2, 2020, the UCBR affirmed the Referee's decision and found Claimant eligible for UC benefits under Section 402(h) of the Law, and determined that no fault overpayment existed. SCI appealed to this Court.[5]

Initially, Section 402(h) of the Law directs that an employee shall be ineligible for UC benefits for any week "[i]n which he is engaged in self-employment[.]" 43 P.S. § 802(h). Section 4(*l*)(2)(B) of the Law provides:

> Services performed by an individual for wages shall be deemed to be employment subject to [the Law], unless and until it is shown to the satisfaction of the [D]epartment [of Labor and Industry (Department)] that -- (a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; **and** (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

---

[4] 43 P.S. § 874(a).

[5] "'Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence.' *Miller v. Unemployment Comp. Bd. of Rev.*, 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014)." *Talty v. Unemployment Comp. Bd. of Rev.*, 197 A.3d 842, 843 n.4 (Pa. Cmwlth. 2018).

3

43 P.S. § 753(*l*)(2)(B) (emphasis added). Section 4(*l*)(2)(B)(a) of the Law is not at issue before this Court.

SCI first argues that the UCBR applied the incorrect legal standard in deciding the instant case. Specifically, SCI contends that the UCBR erroneously found that Claimant was not customarily engaged in an independent trade, profession, occupation or business because the UCBR incorrectly determined that at the time of his separation from NAPA, Claimant was not actively providing services for entities other than NAPA. SCI maintains that, in doing so, the UCBR used an erroneous legal standard that incorrectly focused on whether Claimant was actively working for other third parties. SCI declares that the correct legal standard the UCBR should have used was whether Claimant was actively advertising his services. Thus, SCI claims that the UCBR's decision conflicts with the Pennsylvania Supreme Court's holdings in *A Special Touch v. Department of Labor & Industry*, 228 A.3d 489 (Pa. 2020), and *Danielle Viktor, Ltd. v. Department of Labor & Industry, Bureau of Employer Tax Operations*, 892 A.2d 781 (Pa. 2006).

The UCBR rejoins that there is a lack of evidence that Claimant intended to be in business for himself as a delivery driver for hire and that he took steps toward that end. The UCBR asserts that there is no evidence that Claimant worked for others as a delivery driver, which is one factor that weighs against finding Claimant was customarily engaged in such a trade, occupation, business, or profession. The UCBR further maintains that, contrary to SCI's unsupported assertions, Claimant did not actively advertise his services or hold himself out as being willing to provide his services to others; thus, there is no evidence he was *customarily engaged in an independently established* trade, profession, occupation or business.

The Pennsylvania Supreme Court examined Section 4(*l*)(2)(B)(b) of the Law in *Danielle Viktor* and *Special Touch*. In *Danielle Viktor*, the issue before the

4

Court was "whether individuals who drive limousines (Drivers) for six limousine companies (Appellees) [were] independent contractors or employees pursuant to Section [4](*l*)(2)(B)(b) of the [Law.]" *Danielle Viktor*, 892 A.2d at 783. Therein, the Department, Bureau of Employer Tax Operations (Bureau), characterized Drivers as employees and imposed UC taxes on Appellees. This Court reversed the Bureau and held that Drivers were independent contractors.

The Pennsylvania Supreme Court affirmed this Court's decision, explaining:

> [T]he ownership of the assets of the enterprise, although not a definitive factor, may be relevant to determining independent contractor status. In the matters *sub judice*, the [Bureau] did not acknowledge the fact that Appellees hold the [Public Utility Commission (]PUC[)] licenses and own the limousines because of the realities involved in having the Drivers procure a license. Most Drivers would be unable to obtain the necessary PUC license to operate a limousine service on their own. . . .
>
> Appellees correctly advise that Drivers[]
>
>> could not readily operate common carrier businesses for hire, even if they wanted to. In order to carry passengers for hire in a luxury vehicle, an individual must apply for an [sic] obtain a [PUC] license, purchase livery insurance, obtain luxury vehicles as approved by the [PUC], obtain specialized vehicle tags, and submit rate tariffs for approval by the [PUC]. These conditions precedent to operating a limousine company essentially preclude the average individual from having a proprietary interest in a separate business in the industry.
>
> Brief of Appellees . . . at 32.

*Danielle Viktor*, 892 A.2d at 800-01. The *Danielle Viktor* Court concluded:

> The record supports the holdings of the Commonwealth Court that Appellees demonstrated that Drivers met

5

[Section 4(*l*)(2)(B)(b) of the Law], for several reasons, including: (1) the Drivers' ability to perform their services for more than one entity, including competitors, with no adverse consequences; (2) the operation of their businesses and their ability to perform work did not depend on the existence of any one of the Appellees; and (3) the fact that Drivers bring all necessary perquisites [sic] of providing driving services to limousine companies, even though they do not own the limousines or bear all of the financial risk.

Drivers possess the requisite interest and tools of their trade necessary for the conduct of the business of providing driving services to limousine companies, including their licenses to drive, training, experience, and ability. The fact that Appellees, rather than Drivers, own the limousines because of the realities involved in satisfying PUC requirements does not diminish the fact that Drivers are engaged in their independently established businesses.

*Danielle Viktor*, 892 A.2d at 801-02.

However, in *Special Touch*, the Pennsylvania Supreme Court declared:

[W]hile it is true that the [*Danielle Viktor*] Court generally noted that the case concerned application of the second prong of [Section 4](*l*)(2)(B) [of the Law] (*i.e.*, whether the limousine drivers were 'customarily engaged in an independently established trade, occupation, profession or business'), it is readily apparent that the 'customarily engaged' requirement was not squarely at issue in [*Danielle*] *Viktor* as it is here.

[I]n concluding that [D]rivers at issue were independent contractors, the [*Danielle*] *Viktor* Court observed that [D]rivers could, and many in fact did, perform their services for other companies. *Id*. at 795-802. These observations, however, were clearly made in relation to the Court's analysis of the discrete issue before the Court noted above, namely, whether the business of [D]rivers was established 'independently' from the limousine companies. *See, e.g.*, *id*. at 796-97 ('As indicated by the Final Decisions of the [Bureau], [D]rivers could have offered or did offer their services to others. The businesses

6

of [D]rivers were not established only for the purpose of the work of a particular [employer] taxpayer.').  Further, there was no dispute whatsoever in [*Danielle*] *Viktor* concerning whether [D]rivers were required to be involved in providing their services to others in actuality, as opposed to hypothetically, to demonstrate that [D]rivers were operating 'independently' or otherwise acting as independent contractors for purposes of the second prong of [Section 4](*l*)(2)(B) [of the Law] as is the case here. Thus, for these additional reasons, we do not find [*Danielle*] *Viktor* to be controlling.

*Special Touch*, 228 A.3d at 502.

The *Special Touch* Court interpreted Section 4(*l*)(2)(B)(b) of the law as follows:

> [*W*]*e read* [*Section 4*](*l*)*(2)(B)[(b)]* [*of the Law*] *to be unambiguous in requiring a putative employer to show that an individual* **is actually** *involved in an independent trade, occupation, profession, or business in order to establish that the individual is self-employed* under the second prong of [Section 4](*l*)(2)(B)[(b)] [of the Law]. We read nothing in the definitions of either 'customarily' or 'engaged,' or in [Section 4](*l*)(2)(B)[(b)] [of the Law] beyond this crucial phrase, to signal that the phrase requires only that an individual be capable of being involved in an independently established trade, occupation, profession, or business.  Indeed, we view [Section 4](*l*)(2)(B)[(b)]'s use of the word 'is' before the phrase 'customarily engaged' to lend further credence to our interpretation.  *See* 43 P.S. § 753(*l*)(2)(B)[(b)] (requiring a putative employer to establish that an individual 'is customarily engaged in an independently established trade, occupation, profession or business' as to the services provided to the putative employer by the individual).

*Special Touch*, 228 A.3d at 503-04 (italic and bold emphasis added).

Most recently, in *Lowman v. Unemployment Compensation Board of Review*, 235 A.3d 278 (Pa. 2020), the Pennsylvania Supreme Court clarified its

decision in *Danielle Viktor* in determining whether Lowman, an Uber driver, was an independent contractor.

> To the extent that the Commonwealth Court interprets *Danielle Viktor* to create an exclusive 'three part test' as the governing framework for determining the independence factor of the self-employment test in Section [4](*l*)(2)(B)[(b)] [of the Law], it misconstrues *Danielle Viktor*. To the contrary, *in Danielle Viktor we made clear that all relevant factors presented in a given case should be considered when determining whether a business is independently established*. *Danielle Viktor*, 892 A.2d at 797-[]98. As such, the three considerations referenced in *A Special Touch* [*v. Department of Labor & Industry*, 192 A.3d 1238 (Pa. Cmwlth. 2018), *rev'd*, 228 A.3d 489 (Pa. 2020)] are not exclusive, but rather are just three among many relevant factors to be considered in analyzing the independence factor, depending upon the facts and circumstances of a particular case. Contrary to the Commonwealth Court's nomenclature in *Special Touch* [(Pa. Cmwlth.)], there is no freestanding '*Danielle Viktor* test.'
>
> While the independence factor may be established through evidence that the claimant has acquired the traditional trappings of a business, *e.g.*, a license, a lease, an ownership interest in the assets of a trade or business, business cards, clients, advertising, and/or evidence related to the other factors considered by this Court in *Danielle Viktor*, we reiterate that, like the control factor, <u>*no one circumstance is dispositive, and each case must be addressed on its unique facts*</u>.

*Lowman*, 235 A.3d at 302-03 (bold emphasis omitted; italic and underline emphasis added).

> The *Lowman* Court elucidated:
>
> In the context of determining whether an individual is engaged in self-employment and therefore, ineligible for benefits, an analysis using <u>*Section [4](l)(2)(B)[(b)] [of the Law] does not evaluate what a claimant could do, but what he has done and/or is doing in terms of providing personal*</u>

8

> *services for remuneration*.  Looking at a claimant's real-
> time activities through the lens of Section [4](*l*)(2)(B)[(b)]
> [of the Law] avoids speculation based on hypothetical
> considerations and aids in evaluating a claimant's actual
> status for eligibility purposes.

*Lowman*, 235 A.3d at 303 (italic and underline emphasis added).  The *Lowman* Court focused on the "customarily engaged" portion of the statute, rather than "independently established."  *Lowman*, 235 A.3d at 306.  The *Lowman* Court determined that the factors considered in determining control under Section 4(*l*)(2)(B)(a) of the Law, also help determine whether an individual is customarily engaged under Section 4(*l*)(2)(B)(b) of the Law.  However, given the unusual relationship Uber has with its drivers, the factors were viewed differently therein.

> The *Lowman* Court expounded:
>
> [T]he world in which Uber and Lowman operate is not the
> usual workforce.  Traditionally, hours of work are set and
> required by an employer (or putative employer) because
> the operations of the enterprise are dependent on a set
> number of workers to accomplish a defined task.  In
> contrast[,] here, the fact that Uber allows all of its licensed
> drivers to work at their own discretion evidences a
> decision that there are a sufficient number of individuals
> with access to the Driver App to ensure that, despite erratic
> schedules, there will always be a driver available to
> service passengers requesting Uber's service.  The fact
> that Uber's business model does not require regularly
> scheduled work hours from its workforce does not
> translate into an automatic independent contractor
> relationship.
>
> Moreover, while Lowman could refuse assignments while
> logged in, the evidence of record does not allow a
> conclusion as to the repercussions for such refusal.  The
> [a]greement contains Lowman's acknowledgment that
> failure to accept Uber requests creates a negative
> experience for Uber customers.  The [a]greement also
> gives Uber the right to terminate Lowman's access to the
> Uber App if Uber decided that Lowman caused harm to
> Uber through his acts or omissions.  On this record, we

cannot conclude that the right to refuse assignments is not illusory. Thus, despite some arguable indicia to the contrary, we conclude that Lowman was not engaged in an independently established business.

*Lowman*, 235 A.3d at 307 (internal record citations and footnote omitted).

Here, in determining whether Claimant was customarily engaged in an independently established trade, occupation, profession or business, the UCBR opined:

> To determine whether a claimant was customarily engaged in an independently established trade, profession, or business, [the UCBR] must examine whether the claimant (1) may perform services for more than one entity, including competitors, without adverse consequences; (2) was dependent on the purported employer for work; and (3) had the qualifications, resources, and practical ability necessary to independently provide services.
>
> [] [C]laimant was free to perform services for more than one entity without consequence from the purported employer and [] [C]laimant was free to accept or reject any assignment from customers of the purported employer. However, *there is a lack of evidence that* [] [C]*laimant did perform delivery services for others*. Absent evidence that one independently performed similar services for another entity or individual, *the theoretical ability to work for others does not establish that one was engaged in an independently established trade, occupation, profession, or business*. Further, [] [C]laimant's hours working at NAPA were Monday through Friday, 8:00 a.m. until 5[:00] p.m. which undermines his ability to work for others while performing services [for] NAPA.
>
> The [UCBR] acknowledges a document in the record that shows [] [C]laimant signed up for a free service where he could advertise his delivery services to others, but the [UCBR] credits [] [C]laimant's testimony that he did not utilize that service.[6] There is no other evidence that []

---

[6] "The [UCBR] is the ultimate finder of fact; questions regarding the weight of evidence and witness credibility are solely within its province." *Lowman*, 235 A.3d at 286 n.8.

10

[C]laimant advertised that he would provide delivery services for others.

While [] [C]laimant had the qualifications, resources, and practical ability necessary to independently provide services because he had a driver's license and his own [] vehicle [with] which to perform delivery services, *there is a lack of evidence that he was customarily engaged in an independently established trade, profession, occupation or business.* Therefore, [] [C]laimant is eligible for [UC] benefits under Section 402(h) of the Law.

UCBR Dec. at 3-4 (emphasis omitted; italic and underline emphasis added).

The UCBR began its discussion reiterating and considering the factors discussed in *Danielle Victor*. However, the UCBR was also mindful of the *Special Touch* Court's interpretation of Section 4(*l*)(2)(B)(b) of the Law, requiring a putative employer to show that an individual *is actually involved* in an independent trade, occupation, profession or business. A review of the UCBR's above-quoted decision reveals that, as instructed by *Lowman*, the UCBR reached its conclusion, based on all of the relevant factors presented. Accordingly, the UCBR applied the correct legal standard and properly concluded that Claimant was not customarily engaged in an independent trade, profession, occupation or business.

SCI next argues that the UCBR's decision is not supported by the facts in the record. Specifically, SCI asserts that the following facts satisfy Section 4(*l*)(2)(B)(b) of the Law: (1) Claimant executed and submitted Internal Revenue Service tax forms SS-4 (EIN application) and W-9 (required for third party to issue tax form 1099), indicating his election as a sole proprietor eligible for tax advantages related to self-employment rules and setting up a personal business; (2) Claimant paid his own business expenses, including paying for his vehicle, gasoline, tolls, vehicle liability insurance, and business occupational accidental insurance; (3) Claimant obtained personal insurance coverage; and (4) Claimant advertised his independent delivery services by electing to enroll in CBDriver.com.

11

The UCBR rejoins that Claimant had an EIN number and submitted a W-9 tax form because SCI required both under the Agreement. Further, the UCBR contends that although Claimant enrolled in CBDriver.com, he testified that the only portal he was aware of was the one from SCI where he could look at his paychecks and update his personal information. The UCBR declares that these factors were weighed and determined to be insufficient to satisfy Section 4(*l*)(2)(B)(b) of the Law.

> At the outset,
>
> [s]ubstantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party, . . . giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

*HPM Consulting v. Unemployment Comp. Bd. of Rev.*, 185 A.3d 1190, 1194 n.6 (Pa. Cmwlth. 2018) (quoting *Sanders v. Unemployment Comp. Bd. of Rev.*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999)).

> The law is well[ ]established:
>
> [T]he [UCBR] is the ultimate fact-finder in [UC] matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. *It is irrelevant whether the record contains evidence to support findings other than those made by the fact[-]finder; the critical inquiry is whether there is evidence to support the findings actually made.* Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal.

*HPM Consulting*, 185 A.3d at 1194 (quoting *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (emphasis added; citations omitted)).

12

Here, while SCI focuses on the *independently established trade, profession, occupation or business* portion of Section 4(*l*)(2)(B)(b) of the Law, it ignores the *customarily engaged* portion thereof. Although Claimant's execution and submission of his EIN application and W-9, payment of his business expenses, and obtaining business insurance and personal insurance coverage, demonstrate that Claimant *could* establish a business, "an analysis using Section 4(*l*)(2)(B)[(b)] [of the Law] does not evaluate what a claimant could do, but what he has done and/or is doing in terms of providing personal services for remuneration." *Lowman*, 235 A.3d at 303. Thus, it must be determined whether Claimant was *actually* engaged in his own business.

Here, the UCBR credited Claimant's testimony that he did not advertise his delivery services. Further, the UCBR considered the fact that Claimant delivered auto parts for only NAPA and his hours were Monday through Friday, 8:00 a.m. to 5:00 p.m. Thus, the UCBR concluded that Claimant could not work for others while performing services for NAPA. Claimant secured the delivery position through SCI. Although he could have accepted other assignments had they come along, he did not. His "real-time activities" indicate he was engaged as a delivery driver, strictly for NAPA, through SCI. *Lowman*, 235 A.3d at 303. Accordingly, the UCBR weighed the factors specified by SCI and determined them to be insufficient to satisfy Section 4(*l*)(2)(B)(b) of the Law.

Reviewing the evidence in the light most favorable to Claimant, and giving Claimant the benefit of any inferences which can logically and reasonably be drawn from the evidence, as we must, this Court concludes that the UCBR's decision is supported by substantial evidence.

Moreover,

> [b]ased on the evidence of record and the leading law, we
> see no error by the [UCBR] in its determination that [SCI]

13

> failed to meet its burden of proving Claimant was self-employed. Although it is true that Claimant operated with a certain amount of independence in his relationship with [SCI], there is insufficient evidence to support the alternative outcome, *i.e.*, that Claimant was customarily engaged in an independently established profession and, thus, was ineligible for UC benefits. Accordingly, we affirm the [UCBR's] order.

*Humanus Corp. v. Unemployment Comp. Bd. of Rev.*, ___ A.3d ___, ___ (Pa. Cmwlth. No. 1193 C.D. 2019, filed October 23, 2020), slip op. at 16; *see also Humanus Corp. v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth. No. 307 C.D. 2019, filed May 13, 2020).[7]

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[7] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision of this Court issued after January 15, 2008, may be cited for its persuasive value, but not as binding precedent.

14

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Subcontracting Concepts, Inc.,              :
                  Petitioner      :
                             :
          v.                                 :
                             :
Unemployment Compensation       :
Board of Review,                         :      No. 333 C.D. 2020
                  Respondent      :

## O R D E R

AND NOW, this 16th day of December, 2020, the Unemployment Compensation Board of Review's March 2, 2020 order is affirmed.

_____
ANNE E. COVEY, Judge