IN THE COMMONWEALTH COURT OF PENNSYLVANIA

GNC Community                   :
Federal Credit Union,          :
                                     :
            Petitioner     :
                                       :
             v.                 : No. 1063 C.D. 2018
                                     : Submitted: February 14, 2018
Unemployment Compensation   :
Board of Review,               :
                                       :
            Respondent   :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                               FILED: March 4, 2019

       GNC Community Federal Credit Union (Employer) petitions for review from an order of the Unemployment Compensation Board of Review (Board), which determined that Tracy Taylor (Claimant) was not ineligible for unemployment compensation (UC) benefits under Section 402(e) of the Unemployment Compensation Law (Law)[1] (relating to willful misconduct). Employer contends that the Board's determination that Claimant established good cause to justify her willful misconduct is erroneous and not supported by substantial evidence. Additionally, Employer asserts that the Board violated Employer's due process rights and failed to follow requisite procedures. Discerning no error, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

Claimant worked for Employer as a full-time receptionist from May 2014 until her last day of work on January 26, 2018. After her separation from employment, Claimant applied for UC benefits, which a local service center granted. Employer appealed, and a referee held a hearing.

At the hearing, the referee received evidence and heard testimony from Claimant and two witnesses for Employer: Dianna Cecchini, Employer's CEO (CEO) and Renae Colaizzi, Employer's Branch Manager (Branch Manager).[2] The referee found that Claimant committed willful misconduct by refusing to perform her assigned job functions. Thus, the referee determined that Claimant was ineligible for UC benefits under Section 402(e) of the Law. Claimant appealed.

Based on the record created at the referee's hearing, the Board found the following facts. Employer maintains an employee conduct policy, which states, in relevant part, that unacceptable job performance includes insubordination or failing to follow manager directions. Claimant was aware of Employer's policy. Board Opinion, 7/17/18, Findings of Fact (F.F.) Nos. 2-3.

In May 2014, Employer hired Claimant to be a receptionist for its main bank located in downtown New Castle (main branch). In August 2014, Employer opened a branch bank in Neshannock, approximately three miles from the main branch (satellite branch). At that time, Employer instructed Claimant to work at both bank branches on a daily basis. Claimant began her day at the main branch, took lunch, and then traveled to and worked at the satellite branch, where she finished her day. F.F. Nos. 4-5.

In February 2016, Claimant met with CEO regarding her work hours. CEO informed Claimant that Employer pays her for 40 hours per week; however,

_____

[2] Claimant and Employer were both represented by counsel.

2

Claimant's time records showed that she was working less than 40 hours. CEO directed Claimant to take a 45-minute lunch instead of a one-hour lunch to make up the difference. During the meeting, Claimant requested reimbursement for the mileage she accrued traveling between the bank branches. CEO agreed to pay her the current IRS mileage rate on a monthly basis. Claimant again approached CEO about compensation for mileage and, in May 2017, she was informed that Employer would reimburse her the mileage, but never did. F.F. Nos. 6-8.

In December 2017, Claimant began having transportation issues. She requested the promised reimbursement for mileage and to stay at the main branch during the winter. On January 2, 2018, Claimant did not go to the satellite branch. Claimant received permission from the CEO to remain at the main branch due to a staffing shortage. Two days later, Claimant took her lunch at 3:09 p.m. due to a busy workday. Upon informing CEO, CEO directed Claimant not to travel to the satellite branch that day. F.F. Nos. 9-11.

On January 5, 2018, CEO initiated a meeting with Claimant regarding traveling between the two branches and voiced an issue with Claimant frequently taking a late lunch, which allowed for only a minimal amount of time at the satellite branch. Claimant informed CEO that the tires on her vehicle were bad and her other vehicle was having electrical issues. Claimant requested to remain at the main branch during the winter. CEO stated she would get back to her on the issue, reiterated that Claimant must continue to travel between offices daily, and directed her to take a lunch by 1:30 p.m. F.F. Nos. 12-13.

On January 11, 2018, Claimant, following Employer's written procedural policy, filed a written complaint with the President of Employer's Board of Directors regarding not receiving reimbursement for mileage. Later that month,

3

Claimant met with the President, and they discussed multiple options for resolving Claimant's concerns about traveling between the offices. Claimant asked to remain at either branch for the entire workday, rather than partial days, citing transportation issues. Claimant stated it was difficult to find a ride in the middle of the day to take her to the satellite branch. President indicated that all options would be considered; however, he informed Claimant that the decision was ultimately up to CEO. F.F. Nos. 14-15.

On January 26, 2018, CEO met with Claimant. CEO presented Claimant with a four-page job description for Claimant's position and directed her to sign it. The job description included a provision for daily travel between branches, without mileage reimbursement. Employer indicated that Claimant was paid for 40 hours of work when she frequently worked less than 40 hours and that this difference was approximately the same amount that Claimant would be paid for mileage and, as such, Employer would consider that her compensation for traveling between the bank branches. Claimant refused to sign the job description, and CEO discharged Claimant for insubordination in violation of Employer's policies. F.F. Nos. 16-18.

The Board concluded that Employer has a right to make reasonable changes to an employee's job duties. Commuting three miles a day between branches on a daily basis is a reasonable job change. Claimant performed her new job duties beginning in August 2014 until January 26, 2018, when she refused to sign an updated job description that included the duty to commute between branches. The Board determined that Claimant's refusal to accept the requirement of commuting without mileage reimbursement constituted an act of insubordination.

However, the Board concluded that Claimant demonstrated good cause for her refusal. Employer had agreed to reimburse her monthly for mileage, but

4

never did. Claimant followed Employer's policy by filing a complaint with the President of Employer's Board of Directors. Although multiple solutions were proffered, in the end, CEO chose not to make any accommodations and instead revised Claimant's job duties to require daily commute between branches without mileage reimbursement. The Board determined that Claimant acted reasonably under the circumstances by acting within the process outlined for resolving complaints and had good cause for refusing to accept CEO's offer for settlement of her complaint. Thus, the Board reversed the referee's determination and granted benefits to Claimant. Employer's petition for review to this Court followed.[3]

On appeal, Employer argues that: the Board's findings are not supported by substantial evidence; the Board erred by failing to affirm the referee's decision; and the Board denied it due process.

## Willful Misconduct

First, Employer argues that the Board's findings are not supported by substantial evidence. Claimant was aware, and had agreed to, the travel requirements of the job, yet refused to travel. Claimant had no issue with the travel assignment and compensation arrangement for three years. There was never a

---

[3] Our review of the Board's decision is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact were supported by substantial evidence. *Wise v. Unemployment Compensation Board of Review*, 111 A.3d 1256, 1261 n.5 (Pa. Cmwlth. 2015). In addition, we review for capricious disregard of competent evidence "in every case in which such question is properly before the court." *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002). "A capricious disregard of evidence occurs where the fact finder willfully and deliberately disregards competent and relevant evidence that one of ordinary intelligence could not possibly have avoided in reaching a result." *Wise*, 111 A.3d at 1262. "[W]here there is substantial evidence to support the agency's factual findings and those findings support the legal conclusions, "it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard." *Id.* (quoting *Wintermyer*, 812 A.2d at 487 n.14).

promise to reimburse Claimant for mileage. Instead, Claimant was paid for additional, unworked hours as compensation for the mileage it took to drive to the satellite branch. In addition, Claimant committed other acts of insubordination, including taking lengthy lunch breaks and failing to appear at the satellite branch in a timely manner. According to Employer, the Board ignored this evidence. Claimant did not prove just cause for her actions.

Section 402(e) of the Law provides, "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to [her] discharge . . . from work for willful misconduct connected with his work . . . ." 43 P.S. §802(e). "[W]illful misconduct is defined by the courts as: (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or, (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 (Pa. Cmwlth.), *appeal denied*, 97 A.3d 746 (Pa. 2014) (citing *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422 (Pa. 2002)).

The employer bears the initial burden of proving a claimant engaged in willful misconduct. *Johns*, 87 A.3d at 1009. When asserting a discharge based on a violation of a work rule, an employer must establish the existence of the rule, the reasonableness of the rule, the claimant's knowledge of the rule, and its violation. *Id.* (citing *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338 (Pa. Cmwlth. 2008)).

Policy 5070 of Employer's Employee Handbook governs employee conduct and provides that "insubordination or failing to follow manager directions"

6

constitutes unacceptable conduct subject to corrective action. Reproduced Record (R.R.) at 118a. In addition, this Court has defined insubordination as:

> A willful disregard of an employer's instructions, esp. behavior that gives the employer cause to terminate a worker's employment . . . [or] an act of disobedience to proper authority; esp., a refusal to obey an order that a superior officer is authorized to give" and an unwillingness "to submit to authority . . . disobedience of orders, infraction of rules, or a generally disaffected attitude toward authority.

*Scott v. Unemployment Compensation Board of Review*, 105 A.3d 839, 846 (Pa. Cmwlth. 2014), *appeal denied*, 125 A.3d 779 (Pa. 2015) (citations omitted).

Once an employer meets its burden of proving willful misconduct, the burden shifts to the employee to prove good cause for her actions. *Johns*, 87 A.3d at 1010. An employee establishes good cause where her actions are justified or reasonable under the circumstances. *Docherty v. Unemployment Compensation Board of Review*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006). A determination of "willful misconduct requires a consideration of 'all of the circumstances, including the reasons for the [claimant's] noncompliance with the employer's directives.'" *Id.* (quoting *Navickas v. Unemployment Compensation Board of Review*, 787 A.2d 284, 288 (Pa. 2001)).

Further, in UC cases, the Board is the ultimate fact-finder and is empowered to resolve all issues of witness credibility, conflicting evidence and evidentiary weight. *Wise*, 111 A.3d at 1261-62 (citing *Ductmate*, 949 A.2d at 342). It is irrelevant whether the record contains evidence that would support findings other than those made by the Board; the proper inquiry is whether substantial evidence supports the findings actually made. *Id.* at 1262. Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* A reviewing court must examine "the evidence in the light most favorable to the prevailing party, and give that party the benefit of all inferences that can be logically and reasonably drawn from the testimony." *Id.*

Employer challenges statements made by the Board in its discussion that "CEO chose not to accept any offered solution," that "CEO met with [Claimant] and reneged on the promise to pay for the mileage," and that Claimant "was provided with different reasons for why she was not going to be paid the mileage and, in good faith, she filed a written complaint." *See* Petitioner's Brief at 7, 9 (quoting Board Opinion at 4). According to Employer, Claimant was compensated for mileage. Employer paid Claimant an additional 15 minutes each day to reimburse her for her travel time between the two offices. R.R. at 25a, 28a. This quarterly-hour payment amounted to more money than mileage reimbursement for a one-way three-mile trip. R.R. at 25a-28a, 45a. Employer contends this evidence was ignored.

Contrary to Employer's assertions, this evidence was not disregarded, but considered. *See* F.F. No. 17. However, the Board made numerous findings that Claimant and Employer discussed mileage reimbursement on several occasions, and Employer agreed to reimburse Claimant for mileage, but never did, despite multiple requests for payment. *See* F.F. Nos. 6-9, 13, 14.

The Board's findings are supported by Claimant's testimony, and, to some extent, CEO's own testimony. CEO testified that, as early as February of 2016, Claimant requested mileage. R.R. at 28a. Claimant testified that Employer agreed to reimburse her for mileage on a monthly basis. R.R. at 44a, 49a, 60a. Claimant made several requests to be reimbursed, but was never paid for the mileage. R.R. at

8

49a, 57a, 61a. CEO acknowledged that she and Claimant had several conversations about mileage. R.R. at 63a.

Although Employer asserts that compensation Claimant received for 40 hours a week while working for some fraction of time less than 40 hours a week was higher than what Claimant would receive in mileage (Petitioner's Brief at 9), that assertion is not supported by sufficient evidence to reach that conclusion. Moreover, CEO testified that Employer never reviewed such a cost analysis with Claimant. R.R. at 25a. Claimant testified she was not compensated for 15 minutes to drive to the satellite branch. R.R. at 57a.

Insofar as Employer cites to other instances of insubordination, such as lengthy lunch breaks and failure to appear at the satellite branch in a timely manner or at all, CEO testified that she terminated Claimant because she refused to travel to the satellite branch, not because she was tardy or exceeded her lunch break. R.R. at 33a-34a. Notwithstanding, Claimant testified that the instances cited by Employer were authorized or excused by CEO or Branch Manager. For instance, CEO testified that, on December 28, 2017, Claimant was gone for several hours midday without her knowledge. R.R. at 29a. However, Claimant testified that she had taken her son to a doctor's appointment during the day and had advised her Branch Manager of this appointment. R.R. at 46a. CEO testified that Claimant did not arrive at the satellite branch on January 2, 2018. R.R. at 30a. According to Claimant's testimony, CEO allowed her to remain at the main branch that day because the main branch was short a teller. F.F. No. 10; R.R. at 52a. CEO testified that, on January 4, 2018, Claimant arrived late at the satellite branch. R.R. at 30a. Claimant testified that she did not travel to the satellite branch that day because, by the late hour at which she took lunch, she would have spent only a short time at the satellite branch and CEO

9

excused her from travel that day. F.F. No. 11; R.R. at 53a. CEO also acknowledged that she allowed Claimant to remain at the main branch during inclement weather. R.R. at 29a.

Further, Claimant testified that she did not have a set time for lunch, and she was not told to take her lunch by 1:30 p.m. until the meeting with CEO on January 5, 2018. R.R. at 45a, 53a, 56a. Claimant testified that the main branch was much busier than the satellite branch, which caused her to take a late lunch break or no lunch at all some days. R.R. at 56a. Claimant testified that at no point did she stay at the main branch and not travel to the satellite branch without the approval of the CEO. R.R. at 51a.

Claimant, in accordance with Employer's policy, filed a written complaint regarding her travel between the two branches and mileage reimbursement, among other issues, and met with the President of Employer's Board of Directors. F.F. No. 14; R.R. at 40a-43a. Although the options of working full days in each of the two locations and providing mileage reimbursement were proffered during the meeting, the ultimate decision was CEO's. F.F. No. 15; R.R. at 44a, 63a. CEO presented Claimant with an updated job description that required Claimant to travel daily between the offices with no reimbursement for mileage. F.F. No. 16; R.R. at 50a-51a. Claimant refused to sign the job description and was discharged for insubordination. F.F. No. 18; R.R. at 51a.

Upon review, the Board's findings are supported by substantial evidence. That Employer may have provided "a different version of the events, or . . . might view the testimony differently than the Board, is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco, Inc. v. Unemployment Compensation Board of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). The

10

Board's findings support the determination that Claimant acted reasonably in following Employer's procedure for addressing work issues and had good cause for refusing to accept CEO's offer to resolve her complaint.

**Referee's Decision**

Next, Employer argues that the Board erred by failing to affirm the referee's decision. Employer takes issue with the fact that the referee examined the same evidence and found in Employer's favor. The Board did not indicate any alleged errors made by the referee.

In this regard, Employer misapprehends the Board's role and our standard of review in UC matters. The Board is the ultimate finder of fact and is not bound by the referee's findings and conclusions. *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1385 (Pa. 1985). It is the Board's "exclusive power to resolve conflicts in the evidence and to decide witness credibility and the weight to be accorded the evidence." *Wise*, 111 A.3d at 1261-62. Further, we review the Board's decision, not the referee's, for errors of law and evidentiary support. *Id.* at 1261 n.5. This argument is without merit.

**Due Process**

Next, Employer claims that the Board denied Employer basic due process during the pendency of its appeal. First, the Board did not provide Employer notice of the allowance of appeal, despite two inquiries. Pursuant to the Department of Labor and Industry's regulations, if appeals are allowed by the Board, notice must be given to all interested parties. 34 Pa. Code §101.104(c). Second, Employer

11

contends that the Board failed to provide Employer with an opportunity to file a brief, while expressly granting Claimant the right to do the same.

"It is well settled that the essential elements of due process in an administrative proceeding are notice and an opportunity to be heard." *McFadden v. Unemployment Compensation Board of Review*, 806 A.2d 955, 958 (Pa. Cmwlth. 2002). In the context of a proceeding before the Board, these elements encompass the right to notice as well as the right to request oral argument and to file a brief. *Id.*

To that end, the Board's regulations provide that "[t]he Board may allow or disallow any application for a further appeal without hearing, solely on the basis of the application and the record." 34 Pa. Code §101.104(a). If allowed, the Board "assumes jurisdiction of the appeal" and mails notification "to the last known post office address of each interested party." 34 Pa. Code §101.104(c).

Further, "any of the interested parties may file a written request for oral or written argument." 34 Pa. Code §101.104(e). "Such request will be granted as of course." *Mileski v. Unemployment Compensation Board of Review*, 379 A.2d 643, 644 (Pa. Cmwlth. 1977); *see* 34 Pa. Code §101.104(e) ("the normal time allowed for submitting written argument shall be 7 days from the date of the request"). Each party shall be afforded the opportunity to reply to the arguments and contentions of the other parties. 34 Pa. Code §101.104(e).

Here, the record contains Claimant's petition for appeal to the Board and the cover sheet showing it was mailed to Employer's counsel. R.R. 183a-85a, 187a. Employer does not deny receiving this notice, but complains that it did not receive any "correspondence" from the Board indicating whether the Board allowed or disallowed Claimant's appeal. Petitioner's Brief at 14-15. However, the lower

portion of the petition for appeal indicates that the Board accepted the appeal and assigned an appeal number. R.R. at 184a. Consequently, no further notice was due.

As for Employer's claim that the Board deprived Employer of an opportunity to file a brief, Claimant's counsel requested permission to file a brief on her behalf and then filed one. R.R. at 182a. Employer acknowledged that it received a copy of Claimant's brief. R.R. at 200a. Although the regulations permitted Employer to file its own brief, Employer did not seek the Board's permission to do so. Instead, Employer requested the Board to disregard Claimant's brief because the "previously established record is adequate to meet the Board's fact finding responsibilities and the parties were given ample opportunity to present their testimony and evidence at the Referee hearing." R.R. at 189a, 200a. Consequently, Employer waived its opportunity to respond by brief. Upon review, Employer's due process arguments lack merit.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

GNC Community   :
Federal Credit Union,   :
  :
    Petitioner   :
  :
     v.   : No. 1063 C.D. 2018
  :
Unemployment Compensation   :
Board of Review,   :
  :
    Respondent   :

O R D E R

AND NOW, this 4th day of March, 2019, the order of the Unemployment Compensation Board of Review, dated July 17, 2018, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge